[No. B179520. Second Dist., Div. Five. Apr. 25, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
YEREV SHABTAY, Defendant and Appellant.

**Counsel**

Cheryl Barnes Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael R. Johnsen and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**KRIEGLER, J.**—Penal Code section 484e, subdivision (b)[1] defines an offense of grand theft where a person "within any consecutive 12-month period, acquires access cards issued in the names of four or more persons which he or she has reason to know were taken or retained" with the intent to defraud. The narrow issue in this appeal is whether a defendant may be convicted of more than one violation of section 484e, subdivision (b) within any 12-month consecutive period, when a defendant acquires eight or more access cards. We conclude that the plain language of section 484e, subdivision (b) precludes multiple convictions where the prosecution alleges that the defendant acquired access cards within any consecutive 12-month period.

A jury convicted defendant and appellant Yerev Shabtay of multiple offenses arising from a sophisticated identity theft scheme he operated in 2001, including three counts of grand theft of personal property (§ 487, subd. (a)), two counts of grand theft by possession of access card numbers of

---

[1] All statutory references in this opinion are to the Penal Code, unless otherwise indicated.

11 other persons (§ 484e, subd. (b)), one count of receiving stolen property (§ 496, subd. (a)), and one count of conspiracy to commit grand theft (§§ 182, subd. (a)(1), 487, subd. (a)). The jury found that the victim of grand theft in count 1 sustained a loss exceeding $50,000 within the meaning of section 12022.6, subdivision (a).

Defendant argues he could only be convicted of a *single* count of violating section 484e, subdivision (b), because the prosecution alleged and proved that defendant acquired 11 access cards within a single 12-month period. The Attorney General argues that because the prosecution established that defendant acquired access cards in the names of eight or more persons in a consecutive 12-month period, defendant was properly convicted of two violations of section 484e, subdivision (b). In other words, the Attorney General interprets the statute as allowing for a separate charge during any consecutive 12-month period whenever a defendant acquires enough access cards to reach an ascending multiple of four. For the reasons that follow, we agree that only one conviction within any consecutive 12-month period is permissible, and therefore reverse one of the convictions under section 484e, subdivision (b).

Counts 7 and 8 of the information both alleged in part: "On and between February 6, 2001 and May 8, 2001 . . . the crime of THEFT, in violation of PENAL CODE SECTION 484e[, subdivision] (b), a Felony, was committed by YEREV SHABTAY, who did, within a consecutive 12-month period, acquire access cards issued in the names of four and more persons with reason to know they were taken and retained under circumstances which constitute a violation of the other subdivisions of this section." We review the testimony and extensive documentary evidence in the light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908–909.) Our focus will be on the evidence pertinent to counts 7 and 8—the two grand theft counts defendant argues can only be the subject of a single conviction. All facts are from the case of the prosecution, as no defense witnesses were presented.

Defendant operated an Internet-based electronic sales business in 2001 called "Simply Discount." An employee, Sharon Israel, was instructed by defendant to order electronics equipment on the Internet, using customer information including credit card numbers. Ms. Israel directed that the electronics equipment ordered with customers' credit card information be shipped to one of nine public mailboxes, which had been rented by

defendant. At defendant's direction, Ms. Israel picked up packages at defendant's nine public mailboxes. On a "fairly frequent" basis throughout 2001, Ms. Israel took the packages from the public mailboxes to the residence from which defendant operated his Internet electronics sales venture.

Detectives, armed with a search warrant, searched defendant's place of business, seizing approximately 270 items, the majority of which were computers, digital cameras, and camcorders. Investigators established that some of the electronic equipment had been purchased during 2001 using the credit cards of the 11 victims. That equipment was shipped to the mailboxes where defendant regularly sent Ms. Israel to pick up packages. Eight different victims testified their credit card numbers were used in 2001 without their permission to purchase electronic equipment ultimately found in defendant's place of business. It was stipulated that three other victims did not authorize the use of their credit card numbers to make purchases in 2001 of electronic equipment which was found in defendant's place of business.

Section 484e, subdivision (b) states: "Every person, other than the issuer, who within any consecutive 12-month period, acquires access cards issued in the names of four or more persons which he or she has reason to know were taken or retained under circumstances which constitute a violation of subdivision (a), (c), or (d) is guilty of grand theft."[2] The term "access card" does not merely refer to credit or automatic teller machine cards; it also includes credit card information. Section 484d, subdivision (2) defines the term access card as follows: " 'Access card' means any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a paper instrument." As noted, the term "access card" includes an account number which can be used to obtain "goods . . . or any other thing of value." Hence, if four or more victims' credit card numbers are used within any consecutive 12-month period to commit a crime as specified in section 484e, subdivision (a), (c), or (d), a grand theft has occurred.

---

[2] Section 484e, subdivisions (a), (c), and (d) provide: "(a) Every person who, with intent to defraud, sells, transfers, or conveys, an access card, without the cardholder's or issuer's consent, is guilty of grand theft. [¶] . . . [¶] (c) Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's or issuer's consent, with intent to use, sell, or transfer it to a person other than the cardholder or issuer is guilty of petty theft. [¶] (d) Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

There was substantial evidence defendant used the credit card numbers of 11 victims within a single, consecutive 12-month period to purchase electronic equipment without their permission. Defendant's acquisition of the 11 victims' credit card numbers for a fraudulent use violated section 484e, subdivision (d). (See fn. 2, *ante*; *People v. Molina* (2004) 120 Cal.App.4th 507, 516 [15 Cal.Rptr.3d 493] [applying § 484e, subd. (d)]; *People v. Smith* (1998) 64 Cal.App.4th 1458, 1470 [76 Cal.Rptr.2d 75] [applying predecessor to § 484e, subd. (d)].) The crime of grand theft was committed because defendant acquired access cards issued in the names of four or more persons within a consecutive 12-month period, which he had reason to know were retained by him under circumstances which constitute a violation of section 484e, subdivision (d). (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1233 [51 Cal.Rptr.2d 150] [applying predecessor to § 484e, subd. (b)].)

The issue in this case is whether section 484e, subdivision (b) can be violated more than once in any consecutive 12-month period. As noted earlier, the information alleged that defendant committed two violations of section 484e, subdivision (b), each on or between February 6, 2001, and May 8, 2001.

■ The rules of statutory interpretation are well settled. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*).) We construe the words of a statute in context, and to the extent possible, harmonize provisions relating to the same subject matter. (*People v. Shabazz* (2006) 38 Cal.4th 55, 67 [40 Cal.Rptr.3d 750, 130 P.3d 519]; *People v. Robles* (2000) 23 Cal.4th 1106, 1114 [99 Cal.Rptr.2d 120, 5 P.3d 176]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We do not give statutory language a literal construction if it is contrary to the legislative intent apparent in the statute. (*People v. Robles*, *supra*, 23 Cal.4th at p. 1114.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian*, *supra*, 45 Cal.3d at p. 735.) A statutory interpretation that renders related provisions nugatory must be avoided. (*People v. Shabazz*, *supra*, 38 Cal.4th at p. 67; *People v. Craft* (1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585].) If a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed. (*Lungren v. Deukmejian*, *supra*, 45 Cal.3d at p. 735.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day*, *supra*, 25 Cal.4th at p. 272.) "Ambiguous means 'susceptible to more than one reasonable interpretation.' " (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483 [1495, 35 Cal.Rptr.3d 596].)

■ In our view, the language of section 484e, subdivision (b) is clear and unambiguous, and leads to the inescapable conclusion that there can be only one violation of the statute within any consecutive 12-month period. First, the language of the statute specifically defines the time period in which a violation of the statute may occur as "within any consecutive 12-month period." The Legislature has therefore unambiguously set forth the span of time in which to measure whether a defendant has committed felony grand theft by unlawfully acquiring access card information. The Legislature's determination that a specific period of time—here, any consecutive 12-month period—shall be used to determine whether an offense is a felony grand theft is not unique to section 484e, subdivision (b). (See § 484g [if value of goods obtained by fraudulent use of an access card "exceeds four hundred dollars ($400) in any consecutive six-month period, then the same shall constitute grand theft"]; § 484h, subds. (a), (b) [a retailer commits grand theft by participating in fraudulent access card transactions where the amount in question "exceeds four hundred dollars ($400) in any consecutive six-month period"].)

Second, by defining grand theft as acquiring access cards of "four *or more*" persons (italics added), section 484e, subdivision (b) makes explicitly clear that no matter how many cards are accessed in excess of four, there is only one offense within any consecutive 12-month period. An interpretation of section 484e, subdivision (b), which allowed for more than one prosecution within any single consecutive 12-month period, would effectively delete the "or more" language from of the statute, thereby running afoul of the rule requiring us to avoid an interpretation of a statute that would render a provision nugatory.

■ Had the Legislature intended to allow for multiple prosecutions under section 484e, subdivision (b) for conduct within any consecutive 12-month period, it would have had no reason to include the words "or more" after the word "four." The Legislature could have defined grand theft as each time a defendant acquired four access cards within any consecutive 12-month period, thereby allowing for a new prosecution when another four access numbers were acquired. Instead, the Legislature created a grand theft offense when, within the prescribed period, four or more access cards were acquired. The words "four or more" cannot fairly be interpreted to mean that another violation of the statute occurs when the number of access cards acquired reaches eight, or any higher multiple of four.

The Attorney General makes the procedural argument that defendant's failure to demur to the information pursuant to section 1004[3] constitutes a

---

[3] Section 1004 provides in pertinent part as follows: "The defendant may demur to the accusatory pleading at any time prior to the entry of a plea, when it appears upon the face thereof either: [¶] . . . [¶] 3. That more than one offense is charged, except as provided in Section 954."

waiver of the multiple-conviction issue. We disagree. While a demurrer does lie to challenge an improper charging of more than one offense under section 954, the failure to demur does not justify a multiple conviction that is improper as a matter of law. A demurrer would have prevented a trial on two counts of violating section 484e, subdivision (b). Having failed to demur, defendant cannot complain about any prejudice he may have suffered from facing trial on a count that should not have been prosecuted, because the failure to demur waives the issue. (*People v. Kemp* (1961) 55 Cal.2d 458, 473–475 [11 Cal.Rptr. 361, 359 P.2d 913]; *People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1176–1177 [122 Cal.Rptr.2d 859].) However, the lack of a demurrer does not mean defendant waives any objection to an unwarranted multiple conviction.

■ If a defendant is improperly convicted of multiple counts of grand theft where only one grand theft conviction is proper, we have held that the appropriate disposition is to reverse the unauthorized convictions. (*People v. Packard* (1982) 131 Cal.App.3d 622, 626–627 [182 Cal.Rptr. 576].) Where, as here, we conclude as a matter of law that multiple convictions are not authorized, the issue may be raised on appeal even in the absence of an objection in the trial court. (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [appellate court may consider issue of an unauthorized sentence even in the absence of an objection in the trial court where the sentence could not be imposed under any circumstance in the case].)

■ For these reasons, we conclude defendant should only have been convicted of one violation of section 484e, subdivision (b) for acquiring access cards in the names of four or more persons within the period on and between February 6, 2001, and May 8, 2001. The conviction in count 8 must be reversed.

## DISPOSITION

The conviction in count 8 is reversed, and upon issuance of the remittitur, the trial court shall dismiss count 8. In all other respects, the judgment is affirmed.

Mosk, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the reversal of one of the two Penal Code section 484e, subdivision (b) convictions. I reach the same ultimate conclusion as my colleagues but for materially different reasons. This is an appeal involving mixed issues of statutory interpretation and substantial evidence. (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271 [32

Cal.Rptr.2d 807, 878 P.2d 566]; *McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 554 [37 Cal.Rptr.2d 472].) When the rule of lenity is factored in to the statutory interpretation aspect of the case, defendant prevails.

Unlike my colleagues, I believe the application of the "who within any consecutive 12-month period, acquires access cards issued in the names of four or more persons" is guilty of grand theft language in Penal Code section 484e, subdivision (b) to this case is cloaked in ambiguity. On one hand, it can be argued, as does defendant, that since the 11 credit card numbers were all possessed in a three-month, two-day period as alleged in the information, only one act of grand theft occurred. On the other hand, as the Attorney General argues, the first set of four victims can be segregated into one count which concludes a consecutive 12-month period. There is evidence that defendant between February 19 and March 29, 2001, used the credit card numbers of four victims to order merchandise. There is also evidence that between April 3 and May 8, 2001, defendant used the credit card numbers of four other victims to purchase electronic equipment. According to the Attorney General, a jury could reasonably conclude that any *new* "consecutive 12-month period" within the meaning of Penal Code section 484e, subdivision (b) began to run with the commission of the fifth possession of the stolen credit card number on April 3, 2001. Each theory finds a basis in logic because the Legislature never defines when the controlling "any 12-month" period begins or terminates.

Because Penal Code section 484e, subdivision (b) is ambiguous, resort to legislative documents is in order. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539]; *People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) The first criminal statute to specifically address credit card fraud was adopted in 1961. (Stats. 1961, ch. 813, § 1, pp. 2090–2092.) All of the 1961 statute credit card violations were misdemeanors. (*Ibid.*) After the adoption of the 1961 statute, the Supreme Court and the Court of Appeal held that if a stolen credit card is used to purchase goods, the defendant may only be charged under the misdemeanor provisions of former Penal Code section 484a. (*People v. Ali* (1967) 66 Cal.2d 277, 279 [57 Cal.Rptr. 348, 424 P.2d 932]; *People v. Swann* (1963) 213 Cal.App.2d 447, 451 [28 Cal.Rptr. 830].) This was the case even if the property obtained with a stolen credit card exceeded $200 which, at the time, would have made a theft a felony. In response to this decisional authority, in 1967, the Legislature adopted the predecessor of the current Penal Code section 484e, subdivision (b), which provides for felony treatment of credit-card-related offenses under specified circumstances. (See *People v. Gingles* (1973) 32 Cal.App.3d 1030, 1036 [108 Cal.Rptr. 744].)

The "who within any consecutive 12-month period, acquires access cards issued in the names of four or more persons" language that appears now in Penal Code section 484e, subdivision (b) was first adopted in 1967 in then Penal Code section 484e, subdivision (4). (Stats. 1967, ch. 1395, § 3, p. 3259.[1]) Senate Bill No. 1055, which enacted the predecessor provision of current Penal Code section 484e, subdivision (b), was adopted for the following purposes: "Establishes comprehensive system of penal offenses involving credit cards, and places them (as appropriate) as theft or forgery. Provides for misdemeanor and felony punishments, the value which divides such in some cases being the value of goods obtained, etc., by use of the card, rather than the value of the card. Sets up presumptions of violations based on certain facts." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1055 (1967–1968 Reg. Sess.) as amended May 26, 1967, p. 1; original underscore.) The only discussion of what is now Penal Code section 484e, subdivision (b) in the 1967 Senate Committee on Judiciary analysis states, "Every person who during any consecutive 12-month period receives credit cards in the names of 4 or more persons which he has reason to know were obtained as in (1) or (3), supra, is guilty of grand theft, a felony." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1055 (1967–1968 Reg. Sess.) as amended June 2, 1967, p. 3; original underscore.) The bill memorandum from the legislative secretaries of the Assembly and Senate to former Governor Ronald Reagan states, "The bill extends coverage of existing penal provisions by encompassing areas of misuse not presently proscribed, such as obtaining a credit card through use of false credit card references, dealing in stolen cards, collusion between service establishments and persons possessing stolen or forged cards, and the possession of machinery and plates designed for credit forgery." (Bill Memorandum from Vernon L. Sturgeon and Jack B. Lindsey to Gov. Ronald Reagan, Sen. Bill No. 1055 (1967–1968 Reg. Sess.) Aug. 21, 1967.)

Defendant is entitled, in matters of statutory interpretation, to the benefit of the "rule of 'lenity,' " which is as follows: "[W]e have repeatedly stated that

---

[1] The 1967 version of section 484(e) stated in its entirety: "(1) Every person who acquires a credit card from another without the cardholder's or issuer's consent or who, with knowledge that it has been so acquired, acquires the credit card, with intent to use it or to sell or transfer it to a person other than the issuer or cardholder is guilty of petty theft. [¶] (2) Every person who acquires a credit card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder is guilty of petty theft. [¶] (3) Every person who sells, transfers, conveys, or receives a credit card with the intent to defraud is guilty of petty theft. [¶] (4) Every person other than the issuer, who within any consecutive 12-month period, acquires credit cards issued in the names of four or more persons which he has reason to know were taken or retained under circumstances which constitute a violation of subdivisions (1), (2), and (3) of this section is guilty of grand theft." (Stats. 1967, ch. 1395, § 3, p. 3259.)

when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt that interpretation more favorable to the defendant. (E.g., *People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829]; *People v. Gardeley* (1996) 14 Cal.4th 605, 622 [59 Cal.Rptr.2d 356, 927 P.2d 713].)" (*People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1].) However, the Supreme Court has explained the limited nature of the lenity rule thusly: "As Witkin explains, 'The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53.) In *People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165] . . . , we described the rule of lenity in a way fully consistent with [Penal Code] section 4: 'The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' [¶] Thus, although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*People v. Avery, supra*, 27 Cal.4th at p. 58; see *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1022–1023 [22 Cal.Rptr.3d 876, 103 P.3d 276]; *People v. Farell* (2002) 28 Cal.4th 381, 394–395 [121 Cal.Rptr.2d 603, 48 P.3d 1155].)

Penal Code section 484e, subdivision (b) defines the unauthorized possession of four or more credit card numbers during "*any* consecutive 12-month period" to be grand theft. (Italics added.) As the Supreme Court has noted, " ' "any" means "any." ' " (*People v. Turner* (1990) 50 Cal.3d 668, 704 [268 Cal.Rptr. 706, 789 P.2d 887], quoting *People v. Castro* (1985) 38 Cal.3d 301, 310 [211 Cal.Rptr. 719, 696 P.2d 111]; *People v. Prather* (1990) 50 Cal.3d 428, 434 [267 Cal.Rptr. 605, 787 P.2d 1012].) And as the prosecutor argued in this case, once the first four violations occurred, a new consecutive 12-month period could commence. The problem is, no contemporaneously produced legislative documents support the argument of the Attorney General. No committee report directly or inferentially states a prosecutor may pursue a second Penal Code section 484e, subdivision (b) violation as occurred here. Moreover, the judiciary committee report and memorandum to former Governor Reagan contain no such indication. Nor does any other document promulgated in connection with the adoption of Senate Bill No. 1055 in 1967 support the perspective of the Attorney General. The fairest reading of the historical documents propounded in 1967 show the theory propounded by the Attorney General was never considered by the Legislature. Defendant's construction of Penal Code section 484e, subdivision (b) is not strained.

Hence, the rule of lenity applies. (*People v. Farell, supra,* 28 Cal.4th at pp. 394–395; *People v. Avery, supra,* 27 Cal.4th at p. 58.) Since there was substantial evidence that the 11 credit card numbers were possessed during a single consecutive 12-month period, defendant may only be convicted of a single Penal Code section 484e, subdivision (b) violation.