TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

| | | |
|---|---|---|
| | : | |
| OPINION | : | No. 18-901 |
| | : | |
| of | : | September 22, 2020 |
| | : | |
| XAVIER BECERRA | : | |
| Attorney General | : | |
| | : | |
| LAWRENCE M. DANIELS | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE GALENA WEST, EXECUTIVE DIRECTOR OF THE FAIR POLITICAL PRACTICES COMMISSION, has requested an opinion on the following questions:

1.  Would it violate the Bagley-Keene Open Meeting Act for a majority of Fair Political Practices Commission members to meet privately over lunch and discuss how the Bagley-Keene Act applies to the Commission?

2.  Where a meeting agenda for the Fair Political Practices Commission contains a general statement that the Commission may act on "any" item listed on the agenda, but the description of a specific agenda item states only that the matter will be discussed, may the Commission vote on that specific agenda item without violating the Bagley-Keene Open Meeting Act?

3.  Would it violate the Bagley-Keene Open Meeting Act for a member of the Fair Political Practices Commission to respond to an email message—sent from a member of the public to all five Commission members and other members of the public concerning an item of Commission business—by replying via email only to the sender of that message and the other members of the public?

1

CONCLUSIONS

1.  It would violate the Bagley-Keene Open Meeting Act for a majority of Fair Political Practices Commission members to meet privately over lunch and discuss how the Act applies to the Commission.

2.  Viewed in light of the Bagley-Keene Act's "substantial compliance" standard, the Commission's vote on a specific agenda item would not be voidable where the Commission's meeting agenda contained a general statement that the Commission may act on "any" item listed on the agenda, but the description of the specific agenda item stated only that the matter would be "discussed."

3.  It would not violate the Act for a member of the Commission to respond to an email message—sent from a member of the public to all five Commission members and other members of the public concerning an item of Commission business—by replying via email only to the sender of that message and the other members of the public.

ANALYSIS

The Fair Political Practices Commission is a five-member, independent, non-partisan commission that has primary responsibility for the impartial and effective administration of the Political Reform Act, which regulates campaign financing, conflicts of interest, lobbying, and governmental ethics.[1]  As a multi-member commission statutorily created to conduct regular, official meetings, the Commission is a "state body" subject to the requirements of the Bagley-Keene Open Meeting Act.[2]

The Bagley-Keene Act directs that the "meetings of a state body shall be open and public and all persons shall be permitted to attend any meeting of a state body except as otherwise provided in [the Act]."[3]  The purpose of the Act is to allow members of the public to attend and participate as fully as possible in a state body's decision-making processes.[4]

---

[1] Gov. Code, tit. 9, § 81000 et seq.; 60 Ops.Cal.Atty.Gen. 16, 18-19 (1977); see http://www.fppc.ca.gov/about-fppc.html.

[2] Gov. Code, §§ 11121, subd. (a), 11123, subd. (a), 11127, 83100, 83110, 83111; Cal. Code Regs., tit. 2, § 18310, subd. (a); 60 Ops.Cal.Atty.Gen., *supra*, at p. 20.

[3] Gov. Code, § 11123, subd. (a).

[4] Gov. Code, § 11120; 85 Ops.Cal.Atty.Gen. 145, 147 (2002); see Gov. Code, §§ 11122, 11122.5.

The public's right to open meetings is not only guaranteed by the Act but is enshrined in the state Constitution.[5] As a state body subject to the Act, the Commission has asked three questions about whether the Act would be violated in particular situations, and we address these questions separately below.

**Question 1**

The Commission first asks whether it would violate the Bagley-Keene Act for a majority of the Commission members to meet outside a public meeting—for instance, at a private lunch—and discuss how the Act applies to the Commission. For the following reasons, we believe that it would.

In construing provisions of the Act, we are guided by judicial principles of statutory interpretation. "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose."[6] "In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning [citations]."[7] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."[8]

Here, the Act provides (with limited exceptions) that "[a]ll meetings of a state body shall be open and public and all persons shall be permitted to attend . . . ."[9] Initially, we must determine whether a non-public discussion among a majority of Commission members at lunch to discuss the Act's applicability to the Commission would be a "meeting[] of a state body." For purposes of the Act, a "'meeting' includes any

---

[5] Cal. Const., art. I, § 3, subd. (b)(1) ("The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny").

[6] *Tuolumne Jobs & Small Business Alliance v. Super. Ct.* (2014) 59 Cal.4th 1029, 1037.

[7] *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238; see *Smith v. Selma Community Hosp.* (2010) 188 Cal.App.4th 1, 30 (a court gives unspecialized words in a statute "their usual, ordinary meaning, which in turn may be obtained by referring to a dictionary").

[8] *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.

[9] Gov. Code, § 11123, subd. (a).

18-901

congregation of a majority of the members of a state body at the same time and place to hear, *discuss*, or deliberate upon any item that is within the subject matter jurisdiction of the state body to which it pertains."[10]

It is already established that an informal meeting of members of a legislative body at an event such as a private lunch may constitute a "meeting" subject to the open-meeting requirements of a similar statute.  The Bagley-Keene Act was patterned after the Ralph M. Brown Act ("Brown Act"), which governs local agencies; these statutes are construed in the same way absent a clear linguistic difference calling for a different result.[11]  In the context of the Brown Act, the Court of Appeal has held that a luncheon gathering including five county supervisors and labor representatives to discuss a strike against the county was a "meeting."[12]  Similarly, we have concluded in a prior opinion that the open-meeting requirements of the Brown Act apply to "executive sessions, work sessions, study sessions, briefing sessions, or the increasingly popular breakfast, luncheon, or dinner sessions."[13]  The definition of "meeting" in the Brown Act is materially identical to the definition of "meeting" in the Bagley-Keene Act.[14]  Thus, a discussion at lunch among a majority of the members of the Commission is a "meeting" under the Bagley-Keene Act *if* the discussion is "upon any item that is within the subject matter jurisdiction" of the Commission.  We now examine the meaning of that phrase.

The Act does not specifically define "item," but the word is defined generally as "a separate article or particular."[15]  When the Commission discusses how the Act applies to

---

[10] Gov. Code, § 11122.5, subd. (a), italics added.

[11] *North Pacifica LLC v. Cal. Coastal Com.* (2008) 166 Cal.App.4th 1416, 1433 & fn. 14 (*North Pacifica*); *Travis v. Bd. of Trustees of Cal. State Univ.* (2008) 161 Cal.App.4th 335, 342 & fn. 7; 68 Ops.Cal.Atty.Gen. 65, 66-68 (1985); 67 Ops.Cal.Atty.Gen. 84, 88-90 (1984); Rutter Group Cal. Practice Guide—Admin. Law (Dec. 2018), ch. 28-A, §§ 28:3, 28:4.

[12] *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors* (1968) 263 Cal.App.2d 41, 45, 50-51.

[13] 42 Ops.Cal.Atty.Gen. 61, 63 (1963) (citing 32 Ops.Cal.Atty.Gen. 240, 243 (1958)).

[14] Gov. Code, § 54952.2, subd. (a) (in the Brown Act, "'meeting' means any congregation of a majority of the members of a legislative body at the same time and location, including teleconference location as permitted by Section 54953, to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body").

[15] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 106, col. 2; see *id.* at pp.

4

18-901

it, it is necessarily "considering" that question. Further, that question involves a separate, distinct topic—one that may be necessary for the Commission to consider because, as a state body, it must comply with the Act.[16] A discussion of this subject is therefore "upon any item" within the meaning of Government Code section 11122.5, subdivision (a).

In our view, it would be inappropriate to adopt a definition of "item" that would be limited to an item on an agenda. In other provisions of the Bagley-Keene Act, the Legislature used the term "agenda item."[17] Those provisions imply that when the Legislature did not modify "item" with "agenda" in Government Code section 11122.5, subdivision (a), it did not intend "agenda" to be read into "item."[18] Such a limitation would also allow a state body to circumvent the Act by deliberating on or deciding a matter affecting the public that is not yet, or may never be, placed on an agenda—while excluding the public from participation.

Given our conclusion that the Commission's discussion about how the Act applies to it is an "item," we next consider whether such an item is "within the subject matter jurisdiction of the" Commission.[19] In considering whether a standing committee of a legislative body is itself a legislative body under the Brown Act, we have concluded that "'subject matter' means 'matter presented for consideration,'" and that "'jurisdiction' means 'power, right, or authority to hear . . . a cause.'"[20] Moreover, in defining the "subject

---

118, col. 2 (defining "article" as "an individual object, member, or portion of a class"), 1415, col. 1 (defining "particular" as "an individual or distinct part, as an item of a list or enumeration").

[16] Gov. Code, §§ 11121, subd. (a), 11123, subd. (a), 11127.

[17] See, e.g., Gov. Code, §§ 11123, subd. (b)(1)(E), 11125.7, subds. (a), (h), 11126.4, subd. (d); see also Gov. Code, § 11125.3, subd. (a) (permitting action to be taken under certain circumstances on "items of business not appearing on the posted agenda").

[18] See generally *Walt Disney Parks & Resorts U.S., Inc. v. Super. Ct.* (2018) 21 Cal.App.5th 872, 879 ("Where, as here, the Legislature has chosen to include a phrase in one provision of the statutory scheme, but to omit it in another provision, we presume that the Legislature did not intend the language omitted from the first to be read into the second"); *People v. Roach* (2016) 247 Cal.App.4th 178, 183 ("Our job is to ascertain and declare what is in terms or in substance contained in the provision, not to insert what has been omitted").

[19] Gov. Code, § 11122.5, subd. (a).

[20] 79 Ops.Cal.Atty.Gen. 69, 72 (1996) (analyzing Gov. Code, § 54952, subd. (b)), quoting Webster's Third New Internat. Dict. (1971) pp. 1227, 2276, ellipses in original,

matter jurisdiction" of a court, the California Supreme Court has similarly explained that it is "the inherent authority of the court involved to deal with the case or matter before it."[21]

Applying these definitions, we conclude that the Commission possesses the "subject matter jurisdiction" to consider the matter of how the Bagley-Keene Act applies to it. As mentioned, the Commission has the general duty to comply with the Act.[22] A duty to act entails the power to act and also embraces the responsibility to exercise that power.[23] By discussing how the Act applies to itself, the Commission is considering a matter that it has the authority to hear.[24] And that matter therefore falls within its "subject matter

---

internal citations omitted.

[21] *Barry v. State Bar of Cal.* (2017) 2 Cal.5th 318, 324, internal quotation marks omitted; see also *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 ("Lack of jurisdiction" is "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties," internal quotation marks omitted).

[22] Gov. Code, §§ 11121, subd. (a), 11123, subd. (a), 11127.

[23] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 609, col. 1 (defining "duty" as "something that one is expected to do by moral or legal obligation"); *id.* at p. 139, col. 2 (defining "authority" as "a power or right delegated or given"); see Difference Between, Descriptive Analysis and Comparisons, available at http://www.differencebetw een.info/difference-between-authority-and-responsibility ("The term 'authority' stands for power or rights assigned to an individual to make decisions, whereas 'responsibility' is a *duty* to maintain and manage the assigned authority," italics added).

[24] Additional evidence for concluding that the Commission has authority to discuss this topic may be found elsewhere. In administering the Political Reform Act, the Commission has the authority to adopt rules and regulations "to govern procedures of the Commission." (Gov. Code, § 83112; see Cal. Code Regs., tit. 2, § 18312, subd. (e)(1)(C) [rulemaking procedure].) In exercising this authority, the Commission's procedural regulations address compliance with the Bagley-Keene Act. (See, e.g., Cal. Code Regs., tit. 2, § 18308.1, subds. (a)(9) [the Commission has the authority to "[r]equire a standing committee to give notice pursuant to the Bagley-Keene Act to hold a public hearing on any subject within the jurisdiction of the committee, where the Commission finds that it is in the public interest to do so"], (d)(2)(D) [either of the two enumerated two-member advisory committees must exclude the other commissioners from appearing at an advisory committee meeting unless "the meeting is open to the public and conducted in accordance with the Bagley-Keene Act"], § 18707, subd. (a) [members of the Commission must recuse themselves due to a financial interest in a governmental decision that "relates to an agenda item that is noticed for a meeting subject to the provisions of the Bagley-Keene Act"].) Significantly, to adopt

18-901

jurisdiction."[25]  Finally, this item "pertains" to the Commission, as the question presented indicates that the discussion involves how the Act relates to the Commission.[26]  Consequently, the commissioners in the given scenario are having a "meeting" that must comply with the Act.[27]

Our conclusion conforms with the state constitutional directive to broadly interpret statutes if doing so would advance the public's right of access to a state body's business.[28]  It also furthers the Act's stated policy that the proceedings and deliberation of state agencies be conducted openly.[29]  Indeed, members of the public have a particularly strong interest in participating in any discussion by the Commission that could imperil their own access to the Commission's future actions or deliberations.  Accordingly, we have no hesitation in concluding that the Act would be violated if a majority of the commissioners meets outside a public meeting and discusses how the Act applies to the Commission.

---

any rule or regulation regarding compliance with the Bagley-Keene Act, the California Code of Regulations requires that the commissioners hold a public meeting to collectively consider the matter, which would naturally include a discussion of it.  (See Cal. Code Regs., tit. 2, § 18312, subd. (b).)

[25] Because the Legislature has given the Commission the responsibility to administer the Political Reform Act, but not the Bagley-Keene Act, it has been suggested that the Commission might not have "subject matter jurisdiction" over the Bagley-Keene Act.  But the question here turns on the commissioners' authority to discuss how the Bagley-Keene Act applies to the Commission itself, not whether the Commission has authority to administer the Act broadly.

[26] Gov. Code, § 11122.5, subd. (a) (a discussion is considered a "meeting" only if it "pertains" to the state body); Random House Webster's Unabridged Dict. (2d ed. 1997) p. 1447, col. 1 (defining "pertain" as "to have reference or relation; relate").

[27] The relevant legislative history sheds no further light on the statutory definition of "meeting."  (See Stats. 2009, ch. 150, § 1.)

[28] Cal. Const., art. I, § 3, subd. (b)(2) ("A statute . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access").

[29] Gov. Code, § 11120 ("It is the public policy of this state that public agencies exist to aid in the conduct of the people's business and the proceedings of public agencies be conducted openly so that the public may remain informed.  [¶]  In enacting this article the Legislature finds and declares that is the intent of the law that actions of state agencies be taken openly and that their deliberation be conducted openly").

18-901

We observe that the Act lists certain exceptions to its closed-meeting prohibitions.[30] One of those exceptions provides, "The prohibitions of this article do not apply to . . . [t]he attendance of a majority of the members of a state body at a purely social or ceremonial occasion, if a majority of the members do not discuss among themselves business of a specific nature that is within the subject matter jurisdiction of the state body."[31]  But that exception does not alter our analysis or conclusion.

Even assuming that a lunch with a majority of the commissioners were otherwise a "purely social or ceremonial occasion," we believe the commissioners' discussion about how the Act applies to the Commission would render the exception inapplicable.  We have already established that this topic is within the "subject matter jurisdiction of the state body," and we also believe that such a discussion falls within the meaning of the phrase "business of a specific nature."

While the Act does not define "business," the term is generally understood to mean "affair," "project," or "task."[32]  The Act also does not define "specific," but that word is defined as "having a special application, bearing, or reference; specifying, explicit, or definite."[33]  As for "nature," in this context the term means "character, kind, or sort."[34] Discussing how the Act applies to the Commission would constitute discussing "business of a specific nature that is within the subject matter jurisdiction" of the Commission because it is a definite kind of task—compliance with the applicable open-meeting laws— that falls within the authority of the Commission.  Thus, the exception in the Act for purely social or ceremonial occasions would not apply.[35]

---

[30] Gov. Code, § 11122.5, subd. (c).

[31] Gov. Code, § 11122.5, subd. (c)(5).

[32] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 283, col. 1.

[33] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 1832, col. 1.

[34] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 1281, col. 3; see also *People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279 (relying on a dictionary definition of "nature" as "the essential character or constitution of something" for purposes of the phrase "unconscious of the nature of the act" within the meaning of Penal Code section 261, subdivision (a)(4) [rape of an unconscious person]).

[35] A concern has been expressed that this conclusion would mean that the commissioners' discussion outside a public meeting of matters of public concern— including any law that only theoretically applies to the Commission—would also constitute "business of a specific nature," potentially threatening the free-speech rights of the commissioners.  But the question presented presupposes that the commissioners'

**Question 2**

The second question pertains to the Bagley-Keene Act's requirement that a state body's meeting agenda give the public adequate notice of matters to be discussed or transacted at a scheduled meeting.[36]  Specifically, we are asked to consider circumstances where a Commission meeting agenda contains a general statement that the Commission may act on "any" item listed on the agenda but the description of a specific agenda item states only that the matter will be "discussed."  Under such circumstances, may the Commission proceed to vote on that specific agenda item without violating the Act?

Government Code section 11125 sets forth the Act's notice requirements.[37]  The agenda requirement, located in subdivision (b), provides that "[t]he notice of a meeting . . . shall include a specific agenda for the meeting, containing a brief description of the items of business to be transacted or discussed in either open or closed session."[38]  The word "specific" means "'characterized by precise formulation or accurate restriction:  free from such ambiguity as results from careless lack of precision or from omission of pertinent matter.'"[39]  "[T]he purpose of subdivision (b) is to provide *advance* information to interested members of the public concerning the state body's anticipated business in order that they may attend the meeting or take whatever other action they deem appropriate under the circumstances."[40]  Absent an "emergency situation" or "a need to take immediate action," a state body may not "take action on items of business not appearing on the posted agenda . . . ."[41]

---

discussion is about how the Act applies to *the Commission*.  Our conclusion is limited to the scenario presented to us and does not speak to the situation where a majority of the commissioners outside a public meeting discusses matters with no contemplated application to the Commission.

[36] See Gov. Code, § 11125.

[37] See Gov. Code, § 11125, subd. (a) ("Notice shall be given and also made available on the Internet at least 10 days of the meeting").

[38] Gov. Code, § 11125, subd. (b).

[39] 67 Ops.Cal.Atty.Gen., *supra*, at p. 87, quoting Webster's Third Internat. Dict., Unabridged (1961), internal ellipses omitted.

[40] 67 Ops.Cal.Atty.Gen., *supra*, at p. 87, citing *Carlson v. Pasadena Unified School Dist.* (1971) 18 Cal.App.3d 196, 199-200.

[41] Gov. Code, § 11125.3.

The term "action taken" includes a vote by the members of a state body but does not include mere discussion.[42]  An action taken may be determined invalid if a court finds that the action violated the Act's open-meeting or notice requirements.[43]  But an action taken "shall not be determined to be null and void if . . . [t]he action taken was in substantial compliance" with these requirements.[44]

As we explained in another opinion with respect to the comparable notice provisions of the Brown Act, "the relevant inquiry is not whether there has been a technical violation . . . but rather whether the local legislative body substantially complied with that requirement."[45]  In the context of the Bagley-Keene Act's notice requirements for state legislative bodies, the Court of Appeal has held that "[s]ubstantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute."[46]

---

[42] Gov. Code, § 11122 (providing that "'action taken' means a collective decision made by the members of a state body, a collective commitment or promise by the members of the state body to make a positive or negative decision or an actual vote by the members of a state body when sitting as a body or entity, upon a motion, proposal, resolution, order or similar action"); see also Gov. Code, § 54952.6 (defining "action taken" in the same way for local legislative bodies under the Brown Act).

[43] See Gov. Code, § 11130.3, subd. (a) (setting a 90-day statute of limitations to bring a judicial action to void an action taken by a state body in violation of the open-meeting or notice requirements of the Act).  Before section 11130.3 was enacted to allow for the nullification of an action taken by a state body, we interpreted the Act to be directory, not mandatory.  (67 Ops.Cal.Atty.Gen., *supra*, at p. 92; see Stats. 1985, ch. 936, § 1 [adding Gov. Code, § 11130.3].)

[44] Gov. Code, § 11130.3, subd. (b)(3); see *Regents of Univ. of Cal. v. Super. Ct.* (1999) 20 Cal.4th 509, 527 (*Regents*).

[45] 99 Ops.Cal.Atty.Gen. 11, 15-16 (2016); see Gov. Code, §§ 54954.2, subd. (a), 54954.5, 54956, 54956.5, 54960.1, subd. (d)(1); *Castaic Lake Water Agency v. Newhall County Water Dist.* (2015) 238 Cal.App.4th 1196, 1198 ("We conclude there was no Brown Act violation by Newhall because the given notice substantially complied with the [Brown] Act").

[46] *North Pacifica*, *supra*, 166 Cal.App.4th at p. 1432, internal quotation marks omitted ("Because Government Code section 11130.3, subdivision (b)(3) allows substantial compliance with the Bagley-Keene Act's notice requirements, the objectives of that act can be served without demanding strict compliance with those requirements"); see *id.* at p. 1432-1433 (not invalidating the California Coastal Commission's decision where it mailed

In the scenario contemplated here, one item on the noticed agenda states that the specified matter will be discussed, but does not specifically indicate that any action will be taken on that item. We have observed that state legislative "[b]odies should not label topics as 'discussion' or 'action' items unless they intend to be bound by such descriptions,"[47] explaining that state bodies should provide "interested lay persons" with "enough information to allow them to decide whether to attend the meeting or to participate in that particular agenda item."[48] We remain of that view. An interested layperson might reasonably find that a meeting where action may be taken on a particular item is more important to attend than a meeting where the item will only be discussed. By itself, an agenda item notifying the public only that the item will be discussed does not provide advance information that the item may also be acted upon.

Here, however, a general statement at the top of the agenda would provide that the Commission may act on *any* item listed in the agenda. "Any" means "one, a, an, or some," "one or more," "every," or "all."[49] This general statement would therefore apply to every item in the agenda, including the specific item description stating only that a particular matter will be discussed. Moreover, the specific agenda item description does not state that it will *only* be discussed and *not* acted upon. Read in light of the general statement, the "discussion" designation simply serves to alert the public that the Commission will in fact be considering *this* item. There is thus no conflict or inconsistency between the agenda's general and specific provisions.[50] Even so, to be effective, the general statement

___

notice of a hearing to the incorrect address of the development-permit objector because "it was a reasonable attempt to notify" the objector and thus the commission substantially complied with the Act).

[47] California Attorney General, A Handy Guide to the Bagley-Keene Open Meeting Act (2004) ("Bagley- Keene Guide") p. 8, at https://oag.ca.gov/sites/all/files/agweb/pdfs/publ ications/bagleykeene2004_ada.pdf; see 75 Ops.Cal.Atty.Gen. 263, 266, fn. 4 (1992) ("A prior edition of this publication [(California Attorney General's Office, Secret Meeting Laws Applicable to Public Agencies (1972))] was quoted extensively and given 'great weight' by the Court of Appeal in *Henderson v. Board of Education* (1978) 78 Cal.App.3d 875, 882-883").

[48] Bagley-Keene Guide, *supra*, at p. 8.

[49] Random House Webster's Unabridged Dict. (2d ed. 1997) p. 86, col. 1; see *People v. Shabtay* (2006) 138 Cal.App.4th 1184, 1195 ("'any' means 'any'"), quoting *People v. Turner* (1990) 50 Cal.3d 668, 704, internal quotation marks omitted.

[50] Cf. Code Civ. Proc., § 1859 (in the construction of a written instrument, "when a general and particular provision are inconsistent, the latter is paramount to the former");

must appear prominently on the agenda such that it is easily noticed and understood as applying to any and all agenda items. In other words, for the general statement to provide sufficient *notice*, it must be sufficiently *noticeable*—and not obscured, for example, by an inconspicuous placement on the agenda. Evaluating whether the general statement is "prominent" would be a fact-specific inquiry. Some indicators of prominence (besides the statement's location at the top of the agenda) may be that the statement is in boldface, larger font, or all capital letters.

Accordingly, we conclude that the Commission's vote under such conditions would at least substantially comply with the Bagley-Keene Act's specific-agenda requirement and would therefore withstand a nullification challenge made on that basis. Our conclusion depends on our understanding that "the Commission's actions demonstrate a good faith effort to notify interested persons and the public."[51] More specifically, the agenda contains a general statement that the Commission may take action on "any" listed item; this statement appears prominently on the agenda in language that it is easily noticed and understood; and the matter voted upon is within the scope of the listed agenda item.[52] Of course, we encourage the Commission and other state bodies to keep in mind the Act's objectives of providing the public with adequate and advance information as they prepare future agendas—and, wherever possible, to provide specific guidance to the public on particular items that will or may be acted upon at a meeting.

**Question 3**

The third question asks whether the Act would be violated if a member of the public sends an email concerning Commission business to all five commissioners and other members of the public, and one commissioner thereafter responds to this message with an

---

*State Dept. of Public Health v. Super. Ct.* (2015) 60 Cal.4th 940, 960 (when statutory provisions irreconcilably conflict, "more specific provisions take precedence over more general ones," internal quotation marks omitted).

[51] *North Pacifica*, *supra*, 166 Cal.App.4th at p. 1433.

[52] See 67 Ops.Cal.Atty.Gen., *supra*, at pp. 85-88 (the State Board of Food and Agriculture violated the "specific agenda" requirement of the Act by voting for a resolution opposing congressional designation of the Tuolumne River as a "Wild and Scenic River" and the "Tuolumne River Canyon" as a "wilderness area" where the agenda had stated only that the board would consider "Tuolumne River San Joaquin River Flood Control Problem"); cf. *Moreno v. King* (2005) 127 Cal.App.4th 17, 26-27 (City of King violated agenda requirement of the Brown Act by discussing an employee's dismissal at a meeting where the agenda item stated "Public Employee (employment contract)").

12

email message to the sender and members of the public only.  We see no violation of the Act on these facts.

The Act's open-meeting prohibitions apply not only to contemporaneous decision-making by a majority of the members of a state body, but also to "serial" or "seriatim" meetings resulting from separate private contacts involving members that together amount to majority consideration of the body's business.[53]  Accordingly, Government Code section 11122.5 of the Act provides, "A majority of the members of a state body shall not, outside of a meeting authorized by this chapter, use a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter of the state body."[54]  As a system for transmitting messages electronically, email may be the means for "a series of communications of *any* kind" under this provision.[55]  Significantly, however, the Act authorizes "[i]ndividual contacts or conversations between a member of a state body and any other person" if they do not violate this serial-meeting prohibition.[56]

---

[53] *Regents*, *supra*, 20 Cal.4th at pp. 516, 518, 536 ("serial"); *id.* at pp. 539, 543 (conc. opn. of Brown, J.) ("seriatim"); see *216 Sutter Bay Associates v. County of Sutter* (1997) 58 Cal.App.4th 860, 877 (using the term "serial meetings" with regard to the Brown Act); 65 Ops.Cal.Atty.Gen. 63, 64-65 (1982) (using the term "seriatim meetings" with regard to the Brown Act).

[54] Gov. Code, § 11122.5, subd. (b)(1).  To "deliberate" in this context includes to collectively acquire or exchange information preliminary to a decision.  (Bagley-Keene Guide, *supra*, at pp. 5-6; see *216 Sutter Bay Associates v. County of Sutter*, *supra*, 58 Cal.App.4th at pp. 876-877 ["deliberation" in the Brown Act "connotes not only collective decisionmaking, but also the collective acquisition and exchange of facts preliminary to the ultimate decision," internal quotation marks omitted]; *Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781, 787, 795-798 [gathering where quorum of school board viewed film relating to curriculum under consideration for adoption constituted a "meeting" under the Brown Act because it involved the "collective acquisition and exchange of facts"].)

[55] Gov. Code, § 11122.5, subd. (b)(1), italics added; see 84 Ops.Cal.Atty.Gen. 30, 30-31 (2001) (under the Brown Act, email may not be used to develop a collective concurrence as to board action); Bagley-Keene Guide, *supra*, at p. 6 ("serial meeting issues will arise most commonly in connection with rotating staff briefings, telephone calls or e-mail communications among a quorum of board members").

[56] Gov. Code, § 11122.5, subd. (c)(1); see 65 Ops.Cal.Atty.Gen., *supra*, at p. 66 (the "Brown Act does not purport to regulate the *individual* conduct of individual councilmembers" or the ability of members of the public to "approach and discuss their

13

The California Supreme Court's decision in *Roberts v. City of Palmdale* is instructive.[57]  In *Roberts*, the court addressed a claim that the Brown Act was violated by city council members' receipt of a confidential letter from the city attorney regarding a pending parcel map application before a meeting.[58]  The court determined that the transmission of the city attorney's legal opinion in the letter did not result in a "closed-session meeting" of the city council.[59]  The court distinguished "collective action" by the members of the body, which triggers application of open-meeting requirements, from "passive receipt by individuals of their mail," which does not.[60]  At the same time, the court warned that "the intent of the Brown Act cannot be avoided by subterfuge; a concerted plan to engage in collective deliberation on public business through a series of letters or telephone calls passing from one member of the governing body to the next would violate the open meeting requirement."[61]  Because there was no evidence of "any collective deliberation outside of the open meeting" in that case, however, the court found no "meeting," and thus no Brown Act violation, had occurred.[62]

Taking our cue from the *Roberts* court's Brown Act analysis, we find no "meeting" under the Bagley-Keene Act from the members of the Commission separately opening an email from a member of the public that was also sent to other members of the public.[63]  As described to us, the scenario here indicates nothing more than passive receipt of email.  We also perceive no "meeting" based on one Commission member subsequently replying by email to the original sender and the other members of the public but not to the other commissioners.  A member of the Commission may contact or converse with any other person by email as long as a majority of the Commission is not using the email as part of

---

public business with individual councilmembers").

[57] *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363 (*Roberts*).

[58] *Id.* at pp. 367-369.

[59] *Id.* at p. 375.

[60] *Id.* at p. 376.

[61] *Id.* at pp. 376-377.

[62] *Id.* at pp. 367-369, 377, 381.

[63] The serial-meeting provisions of the Brown Act and the Bagley-Keene Act are identically worded except for their references to "legislative body" and "state body," respectively.  (Compare Gov. Code, § 54952.2, subd. (b)(1) [Brown Act serial-meeting provision] with Gov. Code., § 11122.5, subd. (b)(1) [Bagley-Keene Act serial-meeting provision].)

14

a series of communications to discuss, deliberate, or take action on Commission business.[64] Here, nothing suggests that the commissioner is sending the reply email as part of a concerted plan by a majority of the Commission to engage in collective deliberation through intermediaries (i.e., the recipients of the email).[65]  In fact, the commissioner's decision not to copy the other commissioners on the email message evinces an intent not to collectively deliberate.

We therefore conclude that the Act is not violated if a member of the public sends an email message to all five commissioners and other members of the public, and one commissioner responds by email but only to the members of the public.  This conclusion is based on our understanding that this correspondence is not part of a concerted plan by a majority of the commissioners to engage in collective deliberation on public business through a series of communications.[66]

*****

---

[64] Gov. Code, § 11122.5, subd. (c)(1).

[65] See *Stockton Newspapers, Inc. v. Members of Redevelopment Agency* (1985) 171 Cal.App.3d 95, 103 (explaining that if a quorum of the body "concurred in the purpose of arriving at a collective commitment" and "so intended to unite in an agreement to agree," there would be a Brown Act violation); Bagley-Keene Guide, *supra*, at p. 7 ("So long as the body does not solicit or orchestrate such contacts [by a member of the public to a quorum of the body], they would not constitute a violation of the Bagley-Keene Act. Whether [it is] good policy for a body to allow these individual contacts to occur is a different issue").

[66] We emphasize that our conclusion is restricted only to these two email messages under these limited facts, and that we do not address the legality under the Act of any communications that might follow.