**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hong Ha Thi NGUYEN, Defendant–
Appellant.**

**No. 95–50405.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1996.

Decided April 23, 1996.

Anthony Pacheco, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

C. Thomas McDonald, Esq., Santa Ana, California, for defendant-appellant.

Before: CANBY, BOOCHEVER, and LEAVY, Circuit Judges.

## OPINION

CANBY, Circuit Judge:

Defendant Hong Ha Thi Nguyen appeals her 13–month sentence, imposed by the district court after a jury convicted her of one count of conspiracy in violation of 18 U.S.C. § 371 and one count of possession of counterfeit access devices in violation of 18 U.S.C. § 1029(a)(3). Nguyen raises primarily one sentencing issue: whether a blank credit card is an "access device" within the meaning

of 18 U.S.C. § 1029(e)(1). We conclude that it is, and we affirm.

## BACKGROUND

Nguyen and her codefendant Richard Tiep Hoang contacted Ron Hession, a salesman at Plastic Graphics, to inquire about purchasing membership cards, an encoder, and an embosser, to be used for generating video store membership cards.[1] Hoang gave Hession cash, and Hession ordered an encoder and an embosser for Hoang. When Hoang and Nguyen picked up the encoder from the home of Richard Castro, a service manager at Plastic Graphics, Hoang asked Castro if he could provide blank credit cards.[2] In Nguyen's presence, Castro told Hoang that "it was illegal to get" blank credit cards.

Hession grew suspicious of Hoang and Nguyen because the only contact information they gave him was a pager number, so he notified the United States Secret Service. Posing as an employee of Plastic Graphics, Special Agent Steven L. Byrd organized an undercover operation. While a cooperating seller was showing defendants how to operate the embosser, defendants noticed blank credit cards that Special Agent Byrd had placed on a desk. In a conversation between Nguyen, Hoang, and Special Agent Byrd, Hoang asked Special Agent Byrd to provide him with blank credit cards, and Special Agent Byrd asked Hoang to get credit card account numbers for him. At another meeting between Nguyen, Hoang, and Special Agent Byrd several days later, Hoang exchanged 17 account numbers for 110 blank credit cards from Special Agent Byrd. Hoang promised to provide an additional three account numbers to Special Agent Byrd. After the exchange had taken place, secret service agents approached the car and arrested Hoang and Nguyen.

At the time of the arrest, three credit cards in names other than Hoang's were found in Hoang's wallet, and the 110 blank credit cards were recovered from Nguyen's

1. An embosser raises numbers and letters on plastic cards. An encoder places information, such as account information, on the magnetic strip on the back of a plastic card.

2. Blank credit cards are plastic cards that have not yet been assigned to a particular account holder and do not contain the embossed name of the account holder or the account holder's identifying information on the magnetic strip.

purse. In a post-arrest consensual search of Nguyen's apartment, agents found the embosser, numerous blank white cards that contained magnetic strips, a credit card in the name of Carlos Paniagua, and blank white cards that contained the embossed variations of Nguyen's name and Carlos Paniagua's credit card account number.

Nguyen was convicted of conspiring to violate and violating 18 U.S.C. § 1029(a)(3). She does not challenge her conviction, but she does challenge her sentence. She argues that the district court erroneously concluded that blank credit cards are "access devices" within the meaning of 18 U.S.C. § 1029(e)(1) and that therefore the district court erroneously increased her sentence.

## ANALYSIS

Section 1029(a)(3) provides that "[w]hoever ... knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices ... shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section." As used in this section,

> (1) the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument); [and]
>
> (2) the term "counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device ....

18 U.S.C. § 1029(e).

Under the Sentencing Guidelines, the base offense level for Nguyen's crime is six.

U.S.S.G. § 2F1.1(a) (Nov.1994). The offense level is increased as the loss increases. U.S.S.G. § 2F1.1(b)(1) (Nov.1994). Because there was no actual loss in this case, each access device was assigned a loss of $100. U.S.S.G. § 2B1.1, comment. (n.4) (Nov.1994) ("The loss includes any unauthorized charges made with stolen credit cards, but in no event less than $100 per card.").

Nguyen argues that the 110 blank credit cards do not meet the definition of access devices and therefore should not have increased the loss attributed to her crime. She contends that, because the 110 blank credit cards should not have resulted in an $11,000 addition to the loss calculation, the total loss should have been $2,400 rather than $13,400, and her offense level should have been increased by one, not three levels.[3] Nguyen's calculations would have resulted in 4 to 10 months of imprisonment, whereas the sentence imposed was 13 months.

■ We hold that a blank credit card is an access device within the meaning of 18 U.S.C. § 1029(e)(1). Under the statute, an "access device" includes "any card ... that can be used, alone or *in conjunction with* another access device, to obtain money, goods, [or] services ...." 18 U.S.C. § 1029(e)(1). A blank credit card can be used "in conjunction with another access device"—an account number—in order to gain access to an account or to obtain goods or services. Nguyen's argument that a card without a number cannot gain access to an account simply misperceives the plain language of the statute.

■ Nguyen also argues that, in the absence of evidence that the card and number could actually cause a debit to an account or would be so used, she cannot be held to have possessed an "access device." We rejected a similar contention in *United States v. Bailey*, 41 F.3d 413, 416–17 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2563, 132 L.Ed.2d 815 (1995). There we held that no actual account-holder debit was required for fraudulent use of cellular telephone access devices: "When the statute refers to 'account

---

**3.** Nguyen does not challenge the $2,000 loss assigned for the 20 credit card numbers defendants had promised to deliver, 17 of which were actu-

ally delivered. Nor does she challenge the $400 loss based on the four stolen credit cards.

access,' it evidently means access to the privileges permitted by virtue of the maintenance of an account." *Id.* at 417. Thus it is enough for "the user of the access device [to] be able to obtain goods or services from which he would otherwise be excluded." *Id.* at 418.

Nguyen clearly had the means available to use the blank credit cards "in conjunction with another access device" to obtain money, goods, or services. She possessed an embosser and credit card account numbers. She conspired to possess an encoder.[4] In addition, evidence obtained during the search of her apartment suggests that she was practicing how to emboss account numbers onto blank credit cards. There clearly was no sentencing error in this case.

We decline to reach Nguyen's argument that counting the 20 account numbers in addition to the 110 blank cards is impermissible double counting. If we did find impermissible double counting, the appropriate response would be to subtract the 20 account numbers from the 110 blank credit cards. The total loss would then be $11,000 instead of $13,400, and would therefore result in the same offense level increase. Thus, we do not resolve the double counting argument.

The judgment of the district court is

**AFFIRMED.**

---

4. Nguyen makes no argument that the requirement of section 1029(e)(1) that the device be able to be used "in conjunction with another access device" means that it must be capable of use with *only one* other access device.