[No. B169153. Second Dist., Div. Five. July 7, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR KAVIER MOLINA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III. of Discussion.

508

510

## Counsel

Kathleen Caverly and Barbara L. Sorem, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRIGNON, J.—** ■ A credit card was validly issued by a bank to an individual. The individual cancelled and discarded the credit card. Later, defendant was found in possession of the individual's cancelled credit card. Defendant was convicted of possession of access card account information with respect to an access card validly issued to another person with the intent to use it fraudulently in violation of Penal Code section 484e, subdivision (d). In the published portion of this opinion, we hold that possession of another's cancelled credit card constitutes possession of access card account information with respect to an access card validly issued to another. In the unpublished portion of this opinion, we conclude the trial court did not abuse its discretion in admitting evidence of uncharged misconduct. We affirm the judgment of conviction.

## PROCEDURAL BACKGROUND

Defendant and appellant Omar Kavier Molina was charged by information with fraudulent possession of access card account information. It was further alleged he had suffered four prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). Defendant pled not guilty and proceeded to jury trial. The trial of the prior prison term allegations was bifurcated. The jury found defendant guilty and he subsequently admitted two prior prison term allegations. Defendant was sentenced to the upper term of three years in prison, plus two years for the prior prison term enhancements. Defendant filed a timely notice of appeal.

## FACTS

On April 9, 2003, defendant was stopped for suspicion of driving a stolen car.[1] He gave police a false name, Roberto Santos. An inventory search of defendant's pockets revealed him to be in possession of an equity line credit card in the name of Cortez Smith.

The credit card had been issued to Smith on November 25, 2002, in connection with a home equity line of credit. Smith had not wanted the credit

---

[1] Defendant was not prosecuted for driving a stolen car.

card and had called to cancel it on December 22, 2002. The bank closed the credit card account, but the home equity line of credit remained open. Smith threw the credit card in the trash after the bank closed the credit card account. Smith never received any bills for items charged to the credit card.

At the time of defendant's arrest, he also had in his wallet: a fake identification card in the name of Roberto Santos; a New York Department of Social Services benefit card in another name; and 14 checks, none of which were drawn on an account in defendant's name or payable to him. Some of the checks had already been processed by the bank. Two of the checks had been chemically washed to remove the original writing.

## DISCUSSION

### I. *Statutory Scheme*

Penal Code section 484e, subdivision (d) provides: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." "Under [Penal Code section 484e, subdivision (d),] one who acquires information pertaining to another's access card account without consent and with the intent to defraud is . . . guilty of grand theft." (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1233 [51 Cal.Rptr.2d 150].) There is no statutory definition of "access card account information." "Access card," however, is defined as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a pa per instrument." (Pen. Code, § 484d, subd. (2).)

Defendant contends the evidence is insufficient to support his conviction of possession of access card account information on two bases. First, he argues that a cancelled credit card is not a means of account access that *can be used to obtain* money, goods, or services. Thus, he asserts he did not possess account information with respect to an access card as defined in the statute. Second, he argues a cancelled credit card is not an access card *validly issued to another person.* We will address each of these issues in turn.

### A. *Can Be Used to Obtain*

Penal Code section 484e, subdivision (d) is part of a "comprehensive statutory scheme which punishes a variety of fraudulent practices involving access cards." (*People v. Butler, supra,* 43 Cal.App.4th at p. 1232.) The term

"access card" is broadly defined. (*Ibid.*) "Although the term itself uses the word 'card,' its definition is broad in scope and covers intangible information as well as tangible objects. The term 'access card' is found in every other part of the statutory scheme, and it is unlawful activity associated with an access card that triggers criminal prosecution under the various statutes." (*Ibid.*) "[T]he Legislature did not intend the word 'card' to have its colloquial meaning . . . ." (*Id.* at pp. 1234–1235.) "A significant part of the statutory description of 'access card' includes matters which are not within the common definition of 'card.' " (*Id.* at p. 1235.)

In determining the meaning of the phrase *can be used to obtain*, we are guided by the familiar principles of statutory interpretation. "We begin with the touchstone of statutory interpretation, namely, the probable intent of the Legislature. To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]' " (*Id.* at p. 633.) " 'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . .' " (*Id.* at p. 634.) " 'The words of the statute must be construed in context, keeping in mind the statutory purpose . . . .' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].) " ' " 'If the language [of a statute] is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [Legislature] . . . .' " ' " (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].)

We look first to the actual words of the statute, giving them a plain and commonsense meaning. The statute defines an access card as a card that can be used, alone or in conjunction with another access card, to obtain something of value. The phrase *can be used to obtain* is merely descriptive of the kinds of cards coming within the definition of access card. It does not impose a requirement that the card be currently valid in order to be an access card. An expired, revoked, or cancelled access card can be used, alone or in conjunction with another access card, to obtain something of value. It is common knowledge that access cards reported as lost, stolen or cancelled can nevertheless be used to obtain goods or services. (See, e.g., *People v. Lugashi* (1988) 205 Cal.App.3d 632, 635 [252 Cal.Rptr. 434]; *People v. Whight* (1995) 36 Cal.App.4th 1143, 1147 [43 Cal.Rptr.2d 163].) The Legislature has explicitly acknowledged this fact by enacting Penal Code section 484g, which criminalizes the knowing use of an expired or revoked access card to obtain something of value.

■ We must also construe the words of the statute in context and give meaning to every word and phrase. Penal Code section 484d is the definitional statute for the access card fraud statutory scheme. Not only does the statute include a definition of "access card" in Section 484d, subdivision (2), it also includes definitions of "expired access card" (subd. (3)), "incomplete" access card (subd. (6)), "revoked access card" (subd. (7)), and "counterfeit access card" (subd. (8)). In addition, Penal Code section 484e, subdivision (d) refers to an "access card validly issued to another person." These terms, "expired," "incomplete," "revoked," "counterfeit," and "validly issued," would be unnecessary if the definition of "access card" included only those cards that were currently valid.

Finally, we must construe the statute in light of the legislative purpose. The purpose of the Legislature in enacting and amending the access card fraud statutes is evident. The Legislature intended to broadly define access card to encompass all current means of access card fraud, as well as all future technological changes. (*People v. Butler, supra,* 43 Cal.App.4th at pp. 1237, 1239.) The definition of access card was to be limited only by its express exclusion of paper instruments. (*Id.* at p. 1239.) The Legislature intended to criminalize all fraudulent account access by means currently available or that might become technologically available in the future. (*Ibid.*) Finally, the Legislature intended to criminalize any means to fraudulently access an account either alone or in conjunction with other access devices. (*Ibid.*)

■ Thus, we conclude that the clear language of the statute in context and in conformity with the legislative purpose requires us to interpret the *can be used to obtain* language to foreclose a requirement that a card must be currently valid in order to be an "access card."

This conclusion is buttressed by the legislative history of the statute. "[Penal Code s]ection 484d et seq. was derived from repealed [Penal Code] section 484a. (Stats. 1961, ch. 813, § 1, pp. 2090–2091.) [Penal Code s]ection 484a made it illegal to engage in certain unauthorized practices with 'credit cards.' It defined credit card as 'any instrument, whether in the form of a card, booklet, plastic or metal substance, or the number or other identifying description thereof' issued by a business or financial organization for obtaining on credit 'goods, property, services, or anything of value.' [Citation.] [Penal Code s]ection 484a was repealed and replaced with [Penal Code] section 484d et seq. in 1967. (See 49 West's Ann. Pen. Code (1988 ed.) § 484a, p. 166; *id.,* § 484d, p. 169.) The new law expanded the conduct made criminal, but kept, with modification, the term 'credit card' as its defining element. The statute was amended four more times until 1986 when 'access card' and its present definition replaced 'credit card.' (Stats. 1986, ch. 1436, § 1, p. 5136.)" (*People v. Butler, supra,* 43 Cal.App.4th at p. 1235.)

The language in former Penal Code section 484a defined a credit card as an "instrument . . . which is . . . *issued . . . for obtaining* on credit . . . anything of value." (Stats. 1961, ch. 813, § 1, pp. 2090–2091, italics added.) This *issued for obtaining* language clearly did not require the credit card to be currently valid. Similar language appeared in Penal Code section 484d, subdivision (a) as initially enacted.

Between 1971 and 1985, Penal Code section 484d, subdivision (2) defined "credit card" as "any card, plate, coupon book, or other credit device existing *for the purpose of being used from time to time upon presentation to obtain money, property, labor, or services on credit.*" (Italics added.) Thus, Penal Code section 484d, subdivision (2) defined a credit card as a credit device *existing for the purpose of being used to obtain* something of value on credit. Once again, nothing in this language suggests an intent to limit the term "credit card" to one that is currently valid.

The 1986 change from "credit card" to "access card" was intended to expand the scope of the law to encompass offenses involving ATM (automatic teller machine) and debit cards, as well as credit cards. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2392 (1985–1986 Reg. Sess.) as amended Apr. 24, 1986, p. 2.) The bill was also intended to amend the California statutes to conform with federal legislation concerning "access devices." (*Id.* at pp. 4–5.) As originally introduced, the bill defined "access card" as follows: " 'Access card' means any card, plate, coupon book, code, account number, or other means of account access *which exists for the purpose of being used* from time to time upon presentation *to obtain* money, property, labor, services or anything of value." (Sen. Bill No. 2392 (1985–1986 Reg. Sess.) § 1, as introduced Feb. 21, 1986, italics added.) The *which exists for the purpose of being used to obtain* language was retained until an August 18, 1986 amendment, when it was replaced with the *can be used to obtain* language, which is identical to the 1986 federal definition of "access device." (18 U.S.C. former § 1029(e)(1).) The purpose of the change in language was to conform the state statutory access card language to the federal statutory access device language, and not to narrow the statutory definition of access card.

■ In summary, the historical evolution of the current statutory definition of access card from *issued for obtaining*, to *existing for the purpose of being used to obtain*, to *can be used to obtain* supports the conclusion that the phrase *can be used to obtain* is merely descriptive of the kinds of devices qualifying as access cards, and not a new element of access card fraud crimes requiring the card to be currently valid. Nothing in the legislative history of the statute suggests that the Legislature intended any of these phrases to have different meanings.

B. *Validly Issued*

Penal Code section 484e, subdivision (c) criminalizes the fraudulent possession of an access card. As we have discussed, an access card is defined in Penal Code section 484d, subdivision (2) and includes the phrase "can be used to obtain." Defendant, however, was not convicted of fraudulent possession of an access card in violation of Penal Code section 484e, subdivision (c). He was convicted of fraudulent possession of account information with respect to an access card validly issued to another in violation of Penal Code section 484e, subdivision (d). Thus, we must also discuss the phrase "validly issued to another." There is no question that the credit card found in defendant's possession was originally validly issued to another person. The question arises as to whether the cancellation of the credit card by its holder changed its status. In other words, must the credit card have been not only validly issued, but also valid at the time of the fraudulent possession? We conclude it need not.

■ The phrase "validly issued to another" is clear and unambiguous. It encompasses all access cards that have at one time been validly issued to a person. Accordingly, it excludes counterfeit, incomplete, and blank access cards. The purpose of the legislation adding subdivision (d) to Penal Code section 484e was to protect innocent consumers. (Cal. Bankers' Assn., Mem. to Assem. Public Safety Com. on Assem. Bill No. 158X (1993–1994 1st Ex. Sess.) July 1, 1994.) It was intended to protect innocent consumers from the injury, expense and inconvenience arising from the fraudulent use of their access card account information. In this respect, the crime is to be distinguished from general access card fraud, which may injure only banks and financial institutions or the general public. Thus, the phrase "validly issued to another" describes a particular type of access card and does not speak to the issue of the validity of the card at the time of the fraudulent possession.

■ The crime is possession of access card account information with a fraudulent intent. It does not require that the information actually be used or that the account of an innocent consumer actually be charged or billed. (Cf. *People v. Steffens* (1998) 62 Cal.App.4th 1273, 1284–1285 [73 Cal.Rptr.2d 314] [Pen. Code, § 484f, former subd. (c), alteration of access card account information "in a manner that causes transactions initiated by that card to be charged or billed to a person other than the cardholder"].) Thus, it does not require that the access card be valid at the time of the fraudulent possession. Provided the access card was once validly issued to another, it may be expired, revoked, or cancelled at the time of the fraudulent possession by a defendant.

## II. *Access Card Account Information*

Fraudulent possession of an access card violates Penal Code section 484e, subdivision (c), a misdemeanor. Defendant contends that mere fraudulent possession of an access card may not also constitute fraudulent possession of access card account information in violation of Penal Code section 484e, subdivision (d), a wobbler. He argues that such a construction of the statutes would violate his constitutional right to equal protection and be in contravention of legislative intent. Accordingly, he asserts access card account information must mean something other than only the access card itself. We address both of these issues.

### A. *Equal Protection*

■ As noted previously, Penal Code section 484e, subdivision (d) provides that anyone who acquires or retains possession of account information with respect to an access card validly issued to another person without consent and with fraudulent intent is guilty of grand theft. Penal Code section 484e, subdivision (c) provides that anyone who acquires or retains possession of an access card without the cardholder's or issuer's consent, with the intent to defraud, and with the intent to use, sell or transfer the card is guilty of petty theft.[2]

■ In this case, defendant fraudulently possessed an access card validly issued to another person without consent. An access card account number is both an access card (*People v. Steffens, supra,* 62 Cal.App.4th at p. 1281, fn. 4) and access card account information. Thus, defendant by his fraudulent possession of Smith's credit card probably violated both subdivisions (c) and (d) of Penal Code section 484e. However, it is not the case that a violation of subdivision (c) is also always a violation of subdivision (d). Subdivision (d) applies only to an access card validly issued to another. A defendant may violate subdivision (c) by possession of an incomplete, blank, or counterfeit access card. (Cf. *U.S. v. Nguyen* (9th Cir. 1996) 81 F.3d 912, 914 [a blank card is a federal access device].) Incomplete, blank or counterfeit cards would not have been validly issued to another person. Thus, the two subdivisions are not coextensive.

■ In any event, even if the two subdivisions were coextensive, there would be no equal protection violation. "[The United States Supreme Court] has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." (*United States v. Batchelder* (1979) 442

---

[2] Penal Code section 484e, subdivision (c) provides: "Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's or issuer's consent, with intent to use, sell, or transfer it to a person other than the cardholder or issuer is guilty of petty theft."

U.S. 114, 123–124 [60 L.Ed.2d 755, 99 S.Ct. 2198].) Even if two statutes encompass exactly the same conduct, there is no constitutional infirmity when the prosecution decides to charge the harsher statute. (*Id.* at pp. 124–125.)

### B. *Legislative Intent*

Defendant contends "access card account information" in Penal Code section 484e, subdivision (d) should be construed as meaning "something other than the access card itself," in order to give effect to legislative intent. He argues that he is guilty only of possession of an access card in violation of Penal Code section 484e, subdivision (c), petty theft, and not possession of access card account information in violation of Penal Code section 484e, subdivision (d), grand theft. We disagree with the contention.

Although access card account information is not defined in the statute, the plain and commonsense meaning of the phrase includes the name of the cardholder, the account number, the expiration date and the magnetic stripe on the back of the card. (See, e.g., Pen. Code, § 484i, subd. (b) ["access card account information on any part of an access card, including information encoded in a magnetic stripe"].) Thus, possession of a validly issued access card of another necessarily means possession of account information with respect to an access card validly issued to another. As we have previously discussed, there is some overlap between subdivision (c) and subdivision (d), although they are not coextensive. We conclude Penal Code section 484e is clear and unambiguous in this regard.

Our review of the legislative history of the statute does not disclose a contrary legislative intent. Subdivision (d) was added to Penal Code section 484e in 1994. The Legislature had been concerned about the problem of criminals altering the magnetic stripe on access cards so that the charges on the cards could be made on the victim's account, rather than the account of the name on the card. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 158X (1993–1994 1st Ex. Sess.) as introduced June 16, 1994, p. 2.) To address this problem, subdivision (c) was added to Penal Code section 484f, making it forgery to alter access card account information on any part of an access card "in a manner that causes transactions initiated by that access card to be charged to or billed to a person other than the cardholder to whom the access card was issued." (Stats. 1994, ch. 59 (1993–1994 1st Ex. Sess.) § 2, pp. 8801–8802.) Access card account information included but was not limited to the magnetic stripe on the back of access cards. The bill as introduced also added subdivision (e) to Penal Code section 484e.[3] As

---

[3] The language that is now subdivision (d) of Penal Code section 484e was originally enacted as subdivision (e). As discussed below, the section was rewritten in 1998. At that time, the relevant language was moved to subdivision (d).

introduced, the bill included the following intent requirement: "with the intent of committing forgery in the manner proscribed by subdivision (c) of Section 484f . . . ." (Assem. Bill No. 158X (1993–1994 1st Ex. Sess.) § 1, as introduced June 16, 1994.) Thus, as introduced, the bill prohibited the possession of access card account information with the intent of using it to alter an access card.

Before it was enacted, the bill was amended to include the following intent requirement in subdivision (e) of Penal Code section 484e: "with the intent to use it fraudulently . . . ." (Assem. Bill No. 158X (1993–1994 1st Ex. Sess.) § 1, as amended Aug. 24, 1994.) The purpose of the amendment was to conform the intent requirement of the various sections of the bill to require intent to defraud. (Conc. Sen. Amends. to Assem. Bill No. 158X (1993–1994 1st Ex. Sess.) Aug. 24, 1994, p. 2.) Intent to defraud is broader than intent to alter a card. Subdivision (e) as enacted encompassed more than the acquisition or possession of magnetic stripes with the intent to alter an access card. It encompassed the acquisition or possession of any account information with respect to a validly issued access card with any fraudulent intent. The Legislature intended to provide broad protection to innocent consumers.

In 1988, the Legislature amended Penal Code section 484e in order to make it more "user friendly." (Assem. Com. on Public Safety, Feb. 18, 1998 Analysis of Assem. Bill No. 2008 (1997–1998 Reg. Sess.) as introduced Feb. 18, 1998, p. 1.) As originally introduced, the bill made possession of an access card petty theft and eliminated the separate offense of possession of access card account information. (Assem. Bill No. 2008 (1997–1998 Reg. Sess.) § 8, as introduced Feb. 18, 1998.) The bill was amended twice. First, it was amended to re-include possession of access card account information and, in an acknowledged change from current law, provided that this offense would be petty theft. (*Id.*, as amended Apr. 28, 1998.) Thereafter, it was amended a second time to make the possession of access card account information grand theft. (*Id.*, § 9, as amended June 23, 1998.) The bill was then enacted with no further changes to Penal Code section 484e. Thus, confronted with a clear choice, the Legislature expressly provided that fraudulent possession of account information with respect to an access card validly issued to another would continue to constitute grand theft.

 Penal Code section 484e, subdivision (d) makes it grand theft to acquire account information with respect to an access card validly issued to another with the intent to defraud. A construction of Penal Code section 484e, subdivision (d) to include the information which appears on a validly issued access card of another is consistent with the plain language of the statute and the legislative intent. Defendant was properly convicted of a violation of

Penal Code section 484e, subdivision (d) for the fraudulent possession of the victim's validly issued credit card.

III. *Uncharged Misconduct**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied July 28, 2004, and appellant's petition for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 507.