Filed 9/22/20  P. v. Alvarado CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN ANTHONY ALVARADO,<br><br>    Defendant and Appellant. | G057507<br><br>(Super. Ct. No. 18CF2886)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellen, Judge.  Affirmed in part and reversed in part.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant John Anthony Alvarado appeals from his conviction on seven counts related to his possession of bank statements, identification, checks, and other documents relating to 18 different people. The Attorney General concedes, and we agree, with defendant's contention that possession of multiple blank checks constitutes a single offense, and we reverse the two relevant counts.

Defendants' remaining arguments relate to the applicability of Proposition 47 and two other issues of statutory interpretation. For the reasons stated below, we disagree with each of defendant's assertions on these points and affirm the judgment on the remaining counts.

I

FACTS

In October 2018, Detective Michael Gibbons of the Santa Ana Police Department was driving when he saw a Toyota pickup truck without a front license plate or a current registration sticker on its rear plate. He followed the vehicle, and once it stopped, Gibbons pulled up next to it. A male passenger exited the vehicle and left the scene. A registration check revealed the vehicle's registration was expired.

Gibbons approached defendant, the vehicle's driver, who had exited the vehicle and was standing at the rear of the truck. Gibbons asked defendant for identification, but he could not produce any. Gibbons arrested defendant pursuant to Vehicle Code section 40302, subdivision (a), which permits an arrest for a Vehicle Code violation if the individual cannot provide evidence of their identification.

When asked about the registration, defendant told Gibbons that he thought the vehicle was properly registered and the paperwork was in the vehicle. Gibbons opened the driver's side door to look for the paperwork.

Gibbons found a backpack between the driver's seat and passenger seat and an accordion-type folder underneath the driver's seat. The backpack contained a small,

2

waterproof case which contained a driver's license, which was not in defendant's name, and a credit card that was also not in his name. The accordion file had several sections with marked plastic dividers and envelopes inside them. One of the envelopes was marked with information about the vehicle's make, model, and license plate number, and the notation "traffic stop info." Inside the envelope was an expired one-day moving permit issued by the DMV. One of the identification cards Gibbons found in the backpack had defendant's name and photograph on it.

A second envelope was marked "wrong mailing address." Inside, among other things, were a driver's license and passport, credit cards, and a social security card. Gibbons also found a checkbook and some mail. None of the cards were in defendant's name. Together, Gibbons ultimately found personal information for 18 different individuals, which included various membership cards, forms of government-issued identification, checkbooks, credit and debit cards, and health insurance cards. The majority of cards were bound together with a hair band.

Defendant was ultimately charged with 11 counts: one count of felony identity theft of 10 or more victims (Pen. Code, § 530.5, subd. (c)(3), count one);[1] two counts of felony unlawful acquisition of access card information (§ 484e, subd. (d), counts two and three); three counts of misdemeanor possession of a blank bank bill and note (§ 475, subd. (b), counts four, five, and six); one count of misdemeanor receipt of stolen property (§ 496, subd. (a), count seven); and four counts of misdemeanor identity theft (§ 530.5, subd. (c)(3), counts eight through eleven). Defendant pleaded not guilty.

Prior to trial, the four misdemeanor identity theft counts were dismissed. The court denied defendant's section 1538.5 motion to suppress evidence.

At trial, the jury heard testimony from numerous individuals who owned or were otherwise associated with the cards and other documents found in defendant's

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

vehicle. As relevant here, among the items recovered were two Target credit cards in the name of Celina S., and two letters from Target related to activating the cards. Celina S. testified that she had a Target credit card that she did not use. Several years ago, another Target credit card had been opened in her name, and she had received bills for charges she had not made. She had never seen the two Target cards in her name recovered from the vehicle.

John K. testified that a letter to his life insurance company appeared to be a document he had written to the insurance company. The letter, which included information about his policy and a loan payment, was among the items found in defendant's truck. The letter included his name and home address, and believed he had placed it in the usual location for outgoing mail in his office. Two items found in the vehicle appeared to be checks connected to one of his credit card accounts that the bank had sent to him. He did not recall receiving these checks and stated his usual practice was to destroy them.

The jury convicted defendant on all seven counts. The court granted a defense motion to reduce counts two and three to misdemeanors, suspended imposition of sentence on the remaining counts, and ordered defendant placed on formal probation for three years. One of the terms of probation was 364 days in county jail. Defendant now appeals.

II

DISCUSSION

A. *Proposition 47 (Count One)*

Defendant's first argument is that his conviction for felony identity theft (§530.5, subd. (c)(3)) should be reduced to a misdemeanor because the trial court failed to instruct the jury that the value of the property exceeding $950 was an element of the offense, pursuant to Proposition 47. Further, defendant argues, there was not sufficient

4

evidence of the property's value exceeding $950. The Attorney General argues that while framed as an argument about instructional error and sufficiency of the evidence, the threshold question is whether Proposition 47 applies to section 530.5. The Attorney General is correct, and defendant essentially conceded as much by arguing the point directly in his reply brief.

In November 2014, the voters approved Proposition 47, the "Safe Neighborhood and Schools Act." Proposition 47 reclassified certain offenses from felonies to misdemeanors. (§ 1170.18; *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091-1093.) Since its approval, there have been many cases which have attempted to sort out the precise contours of the new statute.

After this matter was fully briefed, the California Supreme Court settled one of those issues. The court concluded that section 530.5, subdivision (a), the crime of obtaining and using personal identifying information for an unlawful purpose, is not subject to reclassification as a misdemeanor. (*People v. Jimenez* (2020) 9 Cal.5th 53, 59 (*Jimenez*).)[2] Section 530.5, subdivision (a), states: "Every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170."

The defendant in *Jimenez* had, on two occasions, entered a check cashing store and cashed two checks under $950 made payable to himself from a company that did not issue the checks to defendant. (*Jimenez*, *supra*, 9 Cal.5th at p. 59.) In

_____

[2] We asked the parties to provide supplemental letter briefs on *Jimenez* and any subsequent authority. They did so, and we have considered their arguments.

determining whether identity theft could be reduced to misdemeanor theft, the court explained section 530.5, subdivision (a), "makes no mention of theft," adding, "by its very terms, the offense of misuse of personal identifying information can be accomplished by acquiring the information with valid consent, using it for an unlawful purpose, and returning it." (*Jimenez*, at p. 63.) The court reasoned identity theft and misdemeanor theft, which is essentially a shoplifting offense, "are fundamentally different, and they reflect different legislative rationales." (*Id.* at p. 65.) The *Jimenez* court therefore concluded identity theft could not be reduced to petty theft. (*Id.* at p. 70.)

The language of section 530.5, subdivision (c)(3), is slightly different from subdivision (a), the subdivision at issue in *Jimenez*. Subdivision (c)(3) states: "Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of 10 or more other persons is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170." Thus, while subdivision (a) addresses obtaining and using personal identifying information for an unlawful purpose, subdivision (c)(3), addresses the crime of acquiring or retaining such information with the intent to defraud.

Although defendant asserts otherwise, for purposes of Proposition 47, this distinction is not relevant. As the Supreme Court stated in *Jimenez*, although commonly called "identity theft," such offenses are not considered theft offenses. (*Jimenez*, *supra*, 9 Cal.5th at pp. 64-65.) On its face, such offenses address "harms reaching well beyond theft, implicating issues of privacy and control of personal data." (*Id.* at p. 65.) Another court has reached the same conclusion, relying on *Jimenez*, determining that offenses under section 530.5, subdivision (c), are not theft offenses and are not subject to Proposition 47. (*People v. Harrell* (2020) 53 Cal.App.5th 256.) Defendant contends

*Harrell* was wrongly decided, but we disagree, again, finding no meaningful distinction between these two subdivisions for the purposes of Proposition 47.

Accordingly, we find that because Proposition 47 does not apply to section 530.5, subdivision (c), the trial court did not err in its instructions to the jury, nor was there insufficient evidence regarding the value of the documents and cards. Proposition 47 simply does not apply to this crime, and therefore, no error was committed.

### B. Validly Issued Access Cards (Counts Two and Three)

Defendant's next argument relates to counts two and three, the credit cards issued In Celina S.'s name. Defendant asserts that because section 484e, subdivision (d), requires that such cards be "validly issued to another person," he argues there was insufficient evidence of this element of the offense because the accounts were opened fraudulently.

Despite defendant's framing of the issue as entirely one of the sufficiency of the evidence, this is an issue of statutory interpretation, which we review de novo. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1337.)

We begin with the statutory framework. Section 484e, subdivision (d), states: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

Setting aside the irony of the implied contention that card accounts opened fraudulently are somehow *not* theft, the authority defendant relies on undercuts his argument. He cites *People v. Molina* (2004) 120 Cal.App.4th 507 (*Molina*), and attempts to distinguish it, but he ignores much of its language. As *Molina* notes, section 484e is "a 'comprehensive statutory scheme which punishes a variety of fraudulent practices involving access cards.'" (*Molina*, pp. 512-513.) In enacting the statutory scheme in

7

which section 484e is a part, "[t]he Legislature intended to provide broad protection to innocent consumers." (*Molina*, at p. 519.) An access card "is defined as 'any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a [paper] instrument.'" (*Id.* at p. 512.)

With respect to the meaning of "validly issued to another," the *Molina* court found the phrase "clear and unambiguous. It encompasses all access cards that have at one time been validly issued to a person. Accordingly, it excludes counterfeit, incomplete, and blank access cards. The purpose of the legislation adding subdivision (d) to Penal Code section 484e was to protect innocent consumers. [Citation.] It was intended to protect innocent consumers from the injury, expense and inconvenience arising from the fraudulent use of their access card account information. In this respect, the crime is to be distinguished from general access card fraud, which may injure only banks and financial institutions or the general public. Thus, the phrase 'validly issued to another' describes a particular type of access card and does not speak to the issue of the validity of the card at the time of the fraudulent possession." (*Molina*, *supra*, 120 Cal.App.4th at p. 516.)

Defendant would have us read the phrase "validly issued" to include only a card that a consumer applied for and received legitimately. But the purpose behind the law – to protect consumers – is not served by such a limitation. Whether a card is issued to the consumer and later subsequently misused, or the criminal gathered enough information to obtain the card directly from the issuer makes no difference to the consumer. In both cases, the consumer's credit is compromised. They are then subject to "the injury, expense and inconvenience arising from the fraudulent use of their access card account information." (*Molina*, *supra*, 120 Cal.App.4th at p. 516.)

8

The other case defendant cites in an attempt to distinguish it, *People v. Truong* (2017) 10 Cal.App.5th 551, is simply not on point.  The defendant in that case attempted to argue there was no sufficient evidentiary link between the cards in her possession had been issued to her neighbors.  The court rejected this argument, finding there was evidence that the victims had ordered cards that had never arrived, and the cards in the defendant's possession appeared to be theirs.  There was no issue as to whether the cards had been issued legitimately or fraudulently.

We agree with *Molina*'s well established and uncontradicted holding that a validly issued card is one which the institution issues, regardless of whether it is issued legitimately to the consumer or to a fraudster.

Having reached this conclusion, we now examine whether there was sufficient evidence.  "Our role in considering an insufficiency of the evidence claim is quite limited.  We . . . review the record in the light most favorable to the judgment [citation], drawing all inferences from the evidence which supports the . . . verdict." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)  Substantial evidence is "evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  We presume the existence of every fact the trier of fact could have reasonably deduced from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331-332.)

Here, there was sufficient evidence that the Target credit cards were validly issued to Celina S.  The letters accompanying the cards explained how to activate them,

9

and the officer testified at trial that the documentation appears to be what one would expect when opening a new account. She subsequently received bills for charges she had not made. There was no evidence the cards were counterfeit. Thus, we find there was sufficient evidence to support defendant's conviction on counts two and three.

### C. *Multiple Checks and Multiple Counts (Counts Four, Five, and Six)*

Defendant contends that he should only have been convicted of one count, rather than three, of violating section 475, subdivision (b), by possessing three blank checks. This is a question of statutory interpretation that we review de novo. Two of the checks at issue in these three counts are the convenience checks issued to John K. (counts 4 and 5). Count six relates to a book of blank checks belonging to Karmeen V., who did not testify at trial.

The Attorney General concedes that defendant should only have been convicted of one count, not three, and we agree. (*People v. Morelos* (2008) 168 Cal.App.4th 758, 764-765; *People v. Carter* (1977) 75 Cal.App.3d 865, 871; *People v. Bowie* (1977) 72 Cal.App.3d 143, 156-157.)

Because the trial court suspended sentence and placed defendant on probation, we find no reason to remand for resentencing.

### D. *What Constitutes a Check (Counts Four and Five)*

Defendant next claims there was insufficient evidence to convict him of violating section 475, subdivision (b), possession of blank checks with the intent to defraud. These counts, four and five, were based on the checks issued to John K., which were commonly known as "convenience checks" issued on a credit card account.

Because these counts will be reversed pursuant to defendant's previous argument, we need not consider this point.[3]

### III

### DISPOSITION

Defendant's convictions on counts four and five are reversed. The clerk of the trial court is directed to prepare an amended abstract of judgment. In all other respects, the judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

---

[3] As the Attorney General points out, were we to find in defendant's favor on the merits of this issue (which, incidentally, we would not) then his prior argument about multiple counts on multiple checks would not apply, and he would still find himself convicted on count six.