Filed 11/16/20  P. v. Ross CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G057880 |
| v. | (Super. Ct. No. 14HF2219) |
| FRED HOWARD ROSS, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed.

The Law Offices of Charles M. Farano and Charles M. Farano for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal requires us to interpret Penal Code section 484e, which pertains to the theft of access cards (e.g., credit and debit cards) and account information related thereto.[1] Subdivisions (a), (c) and (d) identify three forms of theft that require the intent to defraud. The statute also describes a fourth form of theft, in subdivision (b), that does not require such intent. That provision applies when, within any consecutive 12-month period, the defendant acquires access cards issued to four or more persons under circumstances indicating the cards were taken in violation of subdivision (a), (c) or (d).

Defendant Fred Ross, Jr., was convicted of, inter alia, seven counts of violating subdivision (d) for acquiring the credit card numbers of seven different victims with the intent to defraud. He does not dispute there is sufficient evidence to support his convictions on those counts. However, he contends that instead of being charged with seven counts under subdivision (d), he should have only been charged with one count under subdivision (b). We disagree. When, as here, the evidence shows the defendant unlawfully obtained credit card information from multiple victims with fraudulent intent, the prosecution has the discretion to allege multiple violations of subdivision (d) in lieu of a single violation of subdivision (b). Accordingly, we affirm the judgment.

FACTS

On January 26, 2013, defendant entered the Active Ride skateboard and apparel store at the Irvine Spectrum mall. He walked directly to the watch case and told the clerk he wanted to buy a Nixon ceramic, the most expensive watch in the store. The clerk thought it odd defendant did not want to try on the watch before buying it, but he proceeded to the checkout counter with the timepiece. Defendant grabbed a t-shirt and hat off the shelves and met him there momentarily.

The total sales price for the merchandise was around $3,000. Defendant tendered a Visa card for the purchase, but when the clerk swiped it through the magnetic

---

[1] All statutory references are to the Penal Code, and all subdivision references are to section 484e.

credit card reader, no information came up on his computer screen. This was unusual; typically, when a credit card is swiped, its number and user's name appear on the screen. When told his card was declined, defendant gave the clerk another credit card. When the clerk swiped that one, the same thing happened.

Defendant told the clerk he would come back later for his merchandise. After he left the store, the clerk swiped his own credit card to see if the reader was working and saw that it was. He notified a mall security guard, who spotted defendant walking toward the parking structure. The guard called the police, and within minutes, Irvine police officers arrived on the scene and detained defendant.

During the detention, the officers legally searched defendant's backpack and found a laptop computer and linen paper. They also searched his wallet and found two counterfeit $50 bills that had the same texture as the linen paper. In addition, the police found about 45 access cards in defendant's possession.[2] Many of the cards had fake logos and had been altered to show defendant's name embossed on them.

The investigation into the contents of defendant's computer revealed a treasure trove of incriminating information. The police learned that not only had defendant obtained personal identification information on over 100 people without their knowledge, he had researched the physical properties of credit cards and attempted to create multiple phony driver's licenses and checking accounts. And, he had acquired numerous credit card numbers of unsuspecting individuals. Defendant used those numbers to produce bogus credits cards and purchase goods from a variety of retailers.

Following a jury trial, defendant was convicted of identity theft, second degree burglary, possessing counterfeit currency and forging an official seal. He was also convicted in counts five through eleven with credit card theft under section 484e, subdivision (d), for unlawfully acquiring credit card numbers from seven individuals with

---

[2] The cards were a hodgepodge of credit, debit and gift cards.

3

the intent to defraud. The trial court sentenced him to seven years and eight months in custody for his crimes.

## DISCUSSION

Defendant's appeal is limited to the seven counts of credit card theft under subdivision (d). He accuses the trial court of improperly instructing the jury on those counts. He does not assert the trial court's instructions incorrectly described the elements of subdivision (d), but rather insists he was improperly charged with seven violations of that subdivision. In defendant's view, his extensive credit card thievery should have only been charged as one violation of subdivision (b), and the trial court should have instructed the jury only as to that single count. He also alleges his trial attorney was ineffective for failing to ensure he was charged, and the jury was instructed, in that fashion. We find defendant's arguments unpersuasive.

Section 484e states in full:

"(a) Every person who, with intent to defraud, sells, transfers, or conveys, an access card, without the cardholder's or issuer's consent, is guilty of grand theft.

"(b) Every person, other than the issuer, who within any consecutive 12-month period, acquires access cards issued in the names of four or more persons which he or she has reason to know were taken or retained under circumstances which constitute a violation of subdivision (a), (c), or (d) is guilty of grand theft.

"(c) Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's or issuer's consent, with intent to use, sell, or transfer it to a person other than the cardholder or issuer is guilty of petty theft.

"(d) Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

4

The statute was enacted to protect innocent consumers from fraudulent practices involving access cards. (*People v. Molina* (2004) 120 Cal.App.4th 507, 512, 516 (*Molina*).) To that end, subdivision (d) targets the unlawful acquisition or retention of "access card account information." (§ 484e, subd. (d).) It was intended to protect people from the "injury, expense and inconvenience arising from the fraudulent use" of such information. (*Molina, supra*, 120 Cal.App.4th at p. 516.)

Consistent with the statute's goal, the term "access card" is broadly defined to include any card, plate, code or account number that can be used to obtain anything of value. (*Molina, supra*, 120 Cal.App.4th at p. 512, citing § 484d, subd. (2).) Thus, "[a]n access card account number (such as a credit card number) is both an access card [citation] and access card account information." (*Id*. at p. 517.)

That point is central to defendant's argument because by unlawfully acquiring the credit card numbers of the victims named in counts five thru eleven, he not only violated subdivision (d), which pertains to "access card account information," he also may have violated subdivision (b), which speaks to the acquisition of "access cards." Although the evidence at trial did not reveal *when* defendant acquired those credit card numbers, it is possible he acquired them within a consecutive 12-month period, as required under subdivision (b). Therefore, for purposes of the defendant's argument we will assume his conduct implicated both subdivision (d) and subdivision (b).

Still, that invites the broader question of whether the prosecution was *required* to charge defendant under subdivision (b) in lieu of subdivision (d). Comparing the wording of the two subdivisions, it is apparent they have different elements. Unlike subdivision (b), subdivision (d) only applies to access cards that were *validly issued to another person*. In addition, whereas subdivision (d) requires the intent to defraud, subdivision (b) merely requires the defendant to have reason to know the subject cards were obtained fraudulently.

5

In that sense, subdivision (b) is analogous to the crime of receiving stolen property, which is aimed at people who deal in stolen property, as opposed to people who steal it in the first place. (See *People v. Jaramillo* (1976) 16 Cal.3d 752, 758 [receiving stolen property "'is directed at the traditional "fence" and at those who lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot. Such offenses are essentially different from the actual theft of property.'"].) Indeed, a review of the legislative history materials pertaining to subdivision (b) confirms it was aimed at the "widespread racket in the sale of stolen credit cards" and intended to crack down on those who operate in that secondary market. (Analysis of Sen. Bill No. 1055 prepared for Sen. Jud. Com. hearing of June 1, 1967; C.E.B., Review of Selected 1967 Code Legislation, pp. 152-153.)

The wording of subdivision (b) also supports the conclusion it was intended to target people who receive access cards after they have already been stolen. By its terms, the provision applies when the defendant "acquires" access cards he has reason to know were "taken or retained" under circumstances that violate subdivision (a), (c) or (d). (§ 484d, subd. (b).) This phrasing implies a two-step process in which the acquisition of the cards and the taking/retention thereof are carried out by different people at different times. Subdivision (b) was designed to ensure people involved in the second step of the process – receivers of stolen credit cards and credit card information – do not escape liability, even if they lack the intent to defraud.

In contrast, subdivision (d) speaks to the first step of the process. It applies to any person who acquires access card account information with fraudulent intent, not someone who subsequently obtains that information.

In this case, defendant's conduct fits more squarely into subdivision (d) than subdivision (b) in that he unlawfully acquired the victims' credit card numbers with the intent to use them fraudulently. In fact, the evidence showed he utilized the victims' credit card numbers to acquire a considerable amount of merchandise using the phony

6

credit cards he made from those numbers. Because defendant was not simply a repository for stolen credit numbers but was actively involved in their acquisition and harbored the intent to defraud, subdivision (d) is more descriptive of his conduct than subdivision (b).

Even if both subdivisions were implicated under the facts of this case, the *Molina* decision supports respondent's position that the prosecution was within its rights in charging defendant with violating subdivision (d) instead of subdivision (b). In *Molina*, the defendant was convicted of grand theft for violating subdivision (d). He argued his conviction should be overturned because his conduct also came within the terms of subdivision (c), which constitutes mere petty theft. However, the *Molina* court rejected this argument out of deference to the prosecution's charging authority. The court held that even if the two subdivisions were coextensive, the prosecution could charge the harsher subdivision, so long as its decision to do so was not motivated by a discriminatory intent. (*Molina, supra*, 120 Cal.App.4th at pp. 517-518.)

Defendant does not ascribe any discriminatory motive to the prosecution's decision to charge him with violating subdivision (d) as opposed to subdivision (b). Rather, he contends the decision violates the holding of *People v. Shabtay* (2006) 138 Cal.App.4th 1184 (*Shabtay*).) However, *Shabtay* addressed a different issue altogether. In that case, the court was not asked to decide whether it was permissible for the prosecution to charge the defendant with one particular subdivision of section 484e over another. Instead, the court was confronted with the question of whether the defendant could be charged with multiple violations of subdivision (b) based on his acquisition of 11 access cards over a 12-month period. (*Id*. at pp. 1187-1188.)

The state argued defendant was guilty of two counts of subdivision (b), one for the first four cards he acquired, and one for the second four cards he acquired. However, based on the plain language of subdivision (b), the *Shabtay* court disagreed. Given that subdivision defines grand theft as acquiring access cards of four or more

7

persons during a particular time span, the court ruled "that no matter how many cards are accessed in excess of four, there is only one offense within any consecutive 12-month period." (*Shabtay, supra,* 138 Cal.App.4th at p. 1191.) Thus, the defendant should have been charged and convicted of one count under subdivision (b), not two. (*Id*. at p. 1192.)

Justice Turner concurred in this holding. But instead of basing his decision on the text of subdivision (b), he relied on the rule of lenity, which requires courts to interpret statutory provisions in favor of the defendant when they are susceptible of two reasonable interpretations. (*Shabtay, supra,* 138 Cal.App.4th at pp. 1192-1196 [concur. opn. of Turner, P.J.].) Because none of the justices in *Shabtay* addressed the interplay between subdivision (b) and subdivision (d), that decision is not controlling on the question of whether defendant was properly charged with violating subdivision (d) in our case. (See *People v. Evans* (2008) 44 Cal.4th 590, 599 [cases are not authority for issues they did not consider or decide].)

However, it is important to point out that, in contrast to subdivision (b), the provision at issue in *Shabtay*, subdivision (d) does not define the type of theft it describes in relation to any time period or number of victims. The provision is not ambiguous in terms of its application when multiple victims are involved; rather, it plainly applies whenever a defendant acquires access card account information with respect to a card that was validly issued to any other person. Because the wording of the statute is not uncertain in this regard, the rule of lenity does not apply. (See *People v. Avery* (2002) 27 Cal.4th 49, 58 [rule only applies when there is an egregious ambiguity in a statute such that the court can only guess what the Legislature intended].)

In his reply brief, defendant correctly points out *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*) held that a person generally may not be convicted of more than one theft if he commits multiple acts of theft pursuant to a single overarching theme. However, the *Bailey* decision does not apply to cases such as the present one, where the

8

defendant steals from multiple victims. (*People v. Reid* (2016) 246 Cal.App.4th 822, 831-835.) Therefore, defendant cannot avail himself of that decision either. (*Ibid*.)[3]

In attacking his convictions under subdivision (d), defendant also alludes to the so-called *Williamson* rule. (See *In re Williamson* (1954) 43 Cal.2d 651.) That rule "precludes prosecution under a general statute when a more specific one describes the conduct involved." (*Finn v. Superior Court* (1984) 156 Cal.App.3d 268, 271.) But the rule only applies when "'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' [Citation.]" (*People v. Murphy* (2011) 52 Cal.4th 81, 86.)

As we have explained, the elements of subdivision (d), the supposed general statute in this case, do not correspond to the elements of subdivision (b), the purported special statute. Furthermore, a violation of subdivision (b) for receiving stolen credit card information will not necessarily or commonly result in a violation of subdivision (d) because people who deal in the secondary market for such information are often far removed from the initial taking process. And, there is no requirement that they possess the intent to defraud, which is a key distinguishing feature of subdivision (d). Suffice it to say, there is insufficient overlap between subdivision (b) and subdivision (d) to conclude the *Williamson* rule precludes application of subdivision (d) in this case.

Defendant next invokes section 654 to overturn his convictions under subdivision (d). However, that section concerns multiple punishment, not multiple convictions. (*People v. Correa* (2012) 54 Cal.4th 331, 336.) It does not mandate a reversal of defendant's convictions in this case.

---

[3] In *People v. Whitmer* (2014) 59 Cal.4th 733, the Supreme Court further limited the reach of *Bailey* by ruling it does not apply if the defendant's thefts were separate and distinct from each other. (*Id*. at p. 740.) However, that limitation does not apply here because the defendant's thefts occurred before the *Whitmer* decision was handed down. (*Id*. at p. 742.)

Lastly, defendant contends his subdivision (d) convictions must be reversed on grounds of ineffective assistance. He contends his trial attorney was remiss for failing to challenge the prosecution's decision to charge him with multiple violations of subdivision (d), as opposed to a single violation of subdivision (b). However, our foregoing discussion demonstrates defendant was properly charged with and convicted of seven counts of violating subdivision (d). Therefore, counsel was not derelict for failing to mount a challenge to the charges. (*Strickland v. Washington* (1984) 466 U.S. 668.)[4]

## DISPOSITION

The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

---

[4] The record shows defendant was actually represented by multiple attorneys over the course of his prosecution. In the conclusion section of his opening brief, he alleges he was "haphazardly '[k]icked around'" by his attorneys. However, other than faulting them for not contesting the charges under subdivision (d), defendant does not explain how his various attorneys failed to provide him with effective assistance or otherwise mistreated him. Therefore, we need not delve into his Sixth Amendment claim any further. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [appellant has the duty to explain the basis for the claims he raises on appeal].)

10